BOYLE-FARRELL LAND COMPANY v. HAYNES.

Opinion delivered November 26, 1923.

1. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—In determining whether a verdict is sustained by evidence, the appellate court gives to the supporting evidence its strongest probative force.

2. MASTER AND SERVANT—NEGLIGENCE—EVIDENCE.—In an action for personal injuries to a servant, alleged to have been caused by the master's negligence, evidence *held* to sustain a verdict for the servant.

3. MASTER AND SERVANT—SERVANT RIDING ON LOGGING TRAIN.—Where a master expressly agreed to furnish medical treatment to its servants, which impliedly included transportation on its logging train to the doctor's office, a servant, in riding thereon to and from the doctor's office, is not a mere licensee, and while doing so is entitled to the exercise of ordinary care for his safety.

4. MASTER AND SERVANT—ROTTEN CONDITION OF RAILROAD TIES.—Where a servant was injured from overturning of the master's car in which he was returning from the doctor's office and the rotten condition of the ties was discoverable upon inspection, failure of the master to discover such defect did not excuse the negligence.

5. MASTER AND SERVANT—AUTHORITY OF SUPERINTENDENT.—A lumber company's superintendent, who controlled all of its operations at its camp and in the woods, and who caused its railroad to be inspected and repaired, when necessary, and attended to furnishing medical attention to employees, had authority to permit an employee to ride on the company's train for the purpose of obtaining medical attention.

6. APPEAL AND ERROR—INSTRUCTIONS—HARMLESS ERROR.—Where it was undisputed that plaintiff had a right, by contract, to ride on his employer's train to procure medical attention, instructions which failed to distinguish a mere license from a contract right to ride in such train was harmless.

7. APPEAL AND ERROR—INSTRUCTIONS—HARMLESS ERROR.—In an action by an employee for injuries sustained while riding on his employer's train, instructions that, if the jury found certain facts, "then plaintiff had the right to be on defendant's train," were not erroneous where the undisputed evidence supplied the omission to define or explain the use of the word "right."

8. DAMAGES—PERSONAL INJURIES—VERDICT NOT EXCESSIVE.—Where a laborer 35 years old, in good health, and earning $2.25 a day in steady work, sustained personal injuries causing permanent shortening of a leg and stiffening of the knee, and almost totally impairing the use of such leg, and permanently disabling him for his usual occupation, and he suffered and will continue to suffer great pain and be disfigured for life, a verdict for $18,500 was not excessive.

Appeal from Saline Circuit Court; *W. H. Evans,* Judge; affirmed.

*Coleman, Robinson & House,* for appellant.

1. Appellee, at the time of the injury, was a mere licensee. In order to hold the employer liable, the relation of master and servant must exist at the time of the injury. The injury must have been received in connection with some service then being rendered by the employee in the line of his duty and because of the negligence of the employer. This relation always rests upon contract, express or implied. 146 N. W. 14. The burden of proof was on the appellee to establish a custom in relation to employees riding the train for the purpose of consulting the physician and for other purposes connected with their employment, and knowledge of such custom on the part of the company's official. 96 Ark. 558; 37 L. R. A. 418; 107 Ark. 93; 66 Pac. 909; 2 Hutchinson on Carriers, § 1000; 3 *Id.* § 1205; 128 N. E. 888; 130 N. E. 304; 223 Mass. 492; 112 N. E. 79; 134 N. E. 327. The burden was on him also to establish the right to ride on this train, and the extent thereof, if such right existed. 122 Ark. 168. As a licensee upon appellant's train, the company owed him no duty except to refrain from injuring him after discovering his peril. As a licensee by permission and not by invitation, appellee took his license

with its concomitant risk.    114 Ark. 218; 103 Ark. 226; 90 Ark. 279.

*W. D. Brouse* and *Mehaffy, Donham & Mehaffy,* for appellee.

1.    The contract of employment vested in appellee a right to transportation on the train.    Having contracted to furnish appellee treatment by the company physician, the duty rested on it to furnish him transportation from the camp to the physician's office for the purpose of consulting him, when he was able to travel, or to send the physician to him, if he was not able to make the trip. 58 N. E. 738; 26 Cyc. 1050; 139 Ark. 32; 5 Labatt on Master and Servant, 2d ed., 6185; 66 S. W. 639; 54 S. W. 791; 79 Ark. 484; 122 S. W. 458.    The circumstances affecting the making of a contract should be considered in construing it.   26 Cyc. 969.   And custom is to be taken into consideration in the making and construction of a contract of employment.   78 Ala. 341; 86 Ga. 408, 12 S. E. 678; 50 N. E. 306; 14 So. 241; 36 Md. 567; 167 Mass. 544, 46 N. E. 117; 125 Mich. 594, 84 N. W. 1095; 180 Mo. 241, 79 S. W. 136; 10 N. Y. App. Div. 603, 42 N. Y. Suppl. 370; 196 Pa. St. 580, 46 Atl. 934; 66 N. W. 931; 119 Wis. 429; 96 N. W. 826; 92 Fed. 749.

2.    The cases cited by appellant in support of its contention that appellee was a mere licensee are not applicable to the case at bar, and are not in point.    Appellee was on the train by invitation, and not as a licensee.   As distinguishable between a bare licensee and an "invitee," see 90 Ark. 279.   See also 85 Ark. 326; 89 Ark. 103; 90 Pac. 501.

McCULLOCH, C. J.    Appellant is a domestic corporation, and operates a lumber mill at Farrell, in Pulaski County.    It also operates a log railroad extending from the mill to the woods camp in Saline County, and thence to woods where timber is cut for the mill.    The cars are moved by a steam engine.

Appellee was employed as a log cutter, and while so employed and while riding on the train between Farrell

and the woods camp, was injured on August 6, 1921. This action was instituted by appellee to recover damages on account of said injuries. It is alleged in the complaint that appellee was riding on the train, pursuant to contract with his employer, and that his injuries occurred in a wreck of the train, caused by negligence of the appellant in permitting the railroad track and a flange on a wheel of one of the cars to get out of repair, and in operating the train at dangerous speed.

Appellant, in its answer, denied that appellee had any contractual right to ride on the train, but that he was a mere licensee when so riding; denied that there was any negligence on the part of appellant in any respect, and pleaded contributory negligence on appellee's own part.

A trial of the case resulted in appellee's favor, awarding damages in the sum of eighteen thousand five hundred ($18,500) dollars.

The first contention of appellant's counsel is that the verdict is not sustained by the evidence, and that the court erred in refusing to direct a verdict in appellant's favor. In deciding this question we must, of course, give the evidence its strongest probative force in appellee's favor. Thus viewing the evidence, the established facts are as follows: Appellee was, as before stated, employed by appellant as a log cutter. He resided at the camp, and worked in the woods. At the time of his injury he had been working for appellant for two months, and had worked for appellant during the year 1914, and was conversant with the method of work and the dealings between appellant and its employees for ten years prior to his injury. Under the contract between appellant and its employees, a certain sum each month was deducted out of the wages of the employees to cover the cost of medical attention, and, for the sum so deducted, appellant bound itself to furnish such attention. A physician residing at Farrell was engaged by appellant to attend the employees when ill or injured, and the deduction from

the wages of the men was paid to the physician for his services. The physician attended the men at their homes, when ill or injured and unable to go to Farrell, and the men went to see the physician at his office in Farrell when physically able to do so. Appellant provided means for the men to go, when necessary. They were permitted to choose their own method of getting to Farrell, and were allowed to ride on the train for that purpose. The men sometimes walked, sometimes rode in other conveyances, and sometimes rode on the train. Persons other than employees were permitted to ride free on the train. The custom had been general for a number of years for the men to ride on the train whenever they wanted to. Appellant also carried the men on the train from the camp to the place of work in the woods. One train ran between the camp and Farrell, a distance of six or seven miles, and another between the camp and the woods. Both trains hauled logs, and to the Farrell train there was attached a box-car, which was used in hauling groceries for the men at the camp, and in which persons were permitted to ride. Appellee had been slightly ill of malaria for about a month before his injury, and had been treated by the physician. On the morning of the day the injury occurred appellee desired to go to Farrell on the train to see the physician, and, as the train was about to leave the camp for Farrell, he mentioned this to the woods superintendent, who directed him to go ahead on the train. This superintendent had general supervision and control over the men who worked in the woods—he employed and discharged them. He controlled all of the operations at the camp and in the woods, caused the railroad track between Farrell and the camp and the woods to be inspected and repaired when necessary, and attended to furnishing medical attention to the men when they became ill. Appellee rode on the engine from the camp to Farrell, and, after seeing the physician and getting medicine, he boarded the grocery car in which passengers rode, for the return trip to the camp. When

about two miles out of Farrell the train was wrecked on account of rotten cross-ties, which caused the track to spread. The passenger or grocery car which appellee occupied was overturned, and he was pinned underneath. His left thigh bone, in the middle third, was broken, and his right leg was considerably bruised. He remained under the car an hour before he could be got out. He was carried to Farrell, and received surgical treatment. The bone was set, and he remained in bed seven weeks, and was then permitted to get up and walk around on crutches. The evidence shows that, on account of the break being oblique, the bone did not unite and heal together, but threw out a callus, and this, with the contraction of the muscles, permitted the ends of the bone to slip. There was not enough strength in the bone to bear the man's weight. This was not, according to the evidence, caused by any improper surgical treatment in setting the bone, but was the natural result of the character of the injury. Shortly after getting up, appellee's crutch slipped so as to throw his weight on his left leg, and the broken ends of bone were again disunited. Appellee was then carried to a hospital, where another operation was performed by taking off a short section on each broken end of the bone so as to square the ends and permit them to properly grow together. This permanently shortened the leg about three inches. Appellee's left knee was also permanently stiffened. He suffered great pain, which continued up to the trial.

The rotten condition of the railroad ties could have been discovered by proper inspection. Appellant introduced testimony tending to show proper inspection, but the ties were shown to be mere shells, rotten inside.

We are of the opinion that the evidence was sufficient to sustain the recovery.

Appellee was not, according to the facts which the jury could have found to exist, a mere licensee when riding on the train, but the privilege was a part of his contract of service with appellant. The contract expressly

provided that appellant should furnish medical attention
to the employees when ill.   The proved facts were suffi-
cient to establish an implied contract on the part of
appellant to furnish to the employees means of trans-
portation for them to go to see the physician when neces-
sary.   It was the custom to do so, and the effect of the
contract was not lessened by the fact that appellant per-
mitted persons other than employees to ride on the train
at will.   Such persons were licensees, who enjoyed the
privilege with its concomitant perils, but not so with
employees who rode under contract.   Nor is it important
whether the contract to ride on the train was express
or merely implied—in either event an employee thus rid-
ing on the train was not a mere licensee.   *Arkadelphia
Lumber Co.* v. *Smith,* .78 Ark. 505.

An employee riding on a train or other mode of
transportation, pursuant to contract with his employer,
is entitled to the exercise of ordinary care for his safety,
and, when injured on account of negligence, he may
recover damages.   *St. L. I. M. & So. Ry. Co.* v. *Harmon,*
85 Ark. 503.

It is insisted that the facts do not establish negli-
gence in failing to discover the defects in the railroad
track.   The testimony shows clearly that the rotten con-
dition of the ties was discoverable on proper inspection,
and the failure to discover the defect did not excuse the
negligence.   *Ark. Land & Lumber Co.* v. *Cook,* 157 Ark.
245.

Again, it is urged that the evidence falls short in
showing that the woods superintendent had authority to
direct appellee to ride on the train or to permit a custom
to grow up for the employees to ride on the train for
the purpose of obtaining medical treatment.   The facts
already recited are, we think, amply sufficient to estab-
lish such authority.   The woods superintendent was the
representative of appellant, with complete authority to
control the action of the men at the camp and in the

woods, and to provide the means of furnishing them medical attention.

Errors are assigned in giving each of the following instructions at the request of appellee:

"No. 1.  You are instructed that, if you find from the evidence that plaintiff was on defendant's log train by the express permission of his foreman, and with the knowledge of those in charge of running the train, for the purpose of going to the plant at Farrell to obtain medical treatment of the company physician, and, at the time of his injury, was on his return trip to the logging camp of the defendant, then you are told that he had a right to be on defendant's train.

"No 2.  You are instructed that, if you find from the evidence that it was the general custom for the defendant to carry its employees from its logging camp to its plant at Farrell, for the purpose of obtaining medical treatment of the company physician, and for other purposes, and if you further find that plaintiff, at the time of his injury, had gone to the plant of the defendant to obtain treatment of the company's physician, and was on his return trip to the logging camp, then you are told that he had a right to be on defendant's log train."

Each of these instructions is inaccurate in omitting some of the elements which mark the distinction between a mere licensee and an employee riding under contract. We conclude, however, that the testimony was undisputed as to those elements, and that the omissions were not prejudicial.  The testimony was conflicting as to the alleged permission granted by the superintendent on this occasion for appellee to ride on the train for the purpose of visiting the physician, but that issue was properly submitted to the jury in the first instruction.  There was likewise a conflict in the testimony as to whether or not appellee went to Farrell to obtain treatment, but that issue was also properly submitted in said instruction. The only omission from that instruction was the failure to submit the question of the authority of the superin-

tendent, and, as we have already said, the testimony on that point was undisputed. The only omission from the second instruction was the failure to submit the question of implied contract on the part of appellant to furnish medical treatment to the employee, but that, too, was undisputed. Appellee's own testimony tends to establish the contract, and the superintendent's testimony was to the same effect. He testified that appellant furnished the medical treatment—that he procured the attendance of the physician at the home of the men, and sent them in to the physician at Farrell when necessary. He testified also that it was customary for the men to go on the train, when they desired to do so, for medical attention. This testimony was uncontradicted. This being true, if there was a contract to furnish medical treatment and the means of obtaining it, and if there was a general custom for the men to ride in on the train to visit the physician to obtain medical treatment when needed, this became a part of the contract, and an employee while thus pursuing the journey was not a mere licensee.

It is argued that the use of the word "right" in these and other instructions was erroneous and prejudicial, but we think that, in view of the uncontroverted facts as set forth above, there was no prejudice in the use of that word. The undisputed facts supplied the omission to define or explain the use of the word.

Other assignments of error with respect to the instructions are not well founded.

Finally, it is insisted that the verdict is excessive, but we do not think that the evidence is insufficient to sustain the award.

Appellee was thirty-five years old, in good health, and was earning $2.25 per day in steady work. His right leg was shortened about three inches, and his knee was stiffened. The evidence warranted the finding that the use of the leg was almost totally impaired for life. Appellee is permanently disabled for his usual occupation, and he suffered great pain for a long time, and will

suffer for a long time, if not as long as he lives. The loss of earning capacity, suffering, inconvenience and disfigurement for life, as shown by the evidence, is sufficient to sustain the award.

Affirmed.