Eudora Motor Company *v.* Womack.

4-4820

Opinion delivered November 29, 1937.

*E. P. Toney* and *Buzbee, Harrison, Buzbee & Wright,* for appellant.

*W. W. Grubbs, Bernard P. Whetstone, Jr.,* and *J. R. Wilson,* for appellee.

BUTLER, J. Appellee, Ellis Womack, plaintiff below, brought this action in the circuit court of Chicot county for damages for personal injuries and recovered a judgment for $10,200, from which this appeal is prosecuted. The complaint stated in substance that appellee was a car salesman for the Eudora Motor Company, a partnership composed of J. J. Keller and 'Mrs. H. T. Keller, and was working under the orders and direction of J. J. Keller, the manager, on the 5th day of April, 1936, the date of the occurrence from which his injuries resulted. In making sales it was necessary for appellee to demonstrate cars to prospective purchasers. On the date mentioned, the Eudora Motor Company had for sale a slightly used car which had been received by the company in exchange for a new car a day or two before. About noon of said day, Richard Smith proposed to purchase the used car. Appellee entered into preliminary negotiations for its sale, at which time J. J. Keller was not present. He shortly returned to his place of business, however, and there agreed to the terms of sale made by the appellee. The prospective purchaser desired to try out the car, the manager consented to this and directed appellee to go with him, assuring them that the car had been recently reconditioned and was in good shape. Richard Smith and the appellee got in the front seat of the car, Smith at the driving wheel, and drove off at about fifteen miles per hour, and, until they had driven out of the town of Eudora, when appellee told the purchaser that he could test the car at a little higher rate of speed. The speed was accordingly gradually increased up to thirty miles per hour. At this time the car passed a curve on the highway and entered into a straight stretch of road. Up to this time the car functioned well, but when the straight stretch of road was reached the speed was increased to thirty-five miles per hour, and the car began to zig-zag or weave across the road, the driver being unable to control it. One of its

wheels left the pavement, but was then gotten back upon the pavement and headed straight ahead. The car turned over severely injuring both the driver and the appellee. After the injury the car was returned to the motor company where it was ascertained that a part of the steering apparatus was defective, which defect was of such nature that an ordinary inspection would have disclosed it, and that this was the cause of the accident, and the resulting injuries to appellee.

The negligence alleged was the failure to use ordinary care in making the inspection and the assurance given by J. J. Keller, which was relied upon by appellee, that whatever defects the car had previously had had been repaired on the day before, and that said car was in good shape and ready for operation. There was a general and specific denial of all of the allegations of the complaint, and the further defense that appellee's injuries resulted from a risk assumed by him, and that he, himself, was negligent, such negligence being a contributing cause to his injuries. The further defense was tendered that the accident was the result of the negligence "of a fellow-employee, or of the man who was driving the car."

It is conceded that if the judgment be affirmed the award of damages is not excessive. It is insisted, however, for reversal and dismissal, (1) that the evidence fails to support an inference that there was a defect in the steering apparatus, the "tie rod," prior to the accident; (2) that there is no evidence to show that appellants failed to exercise due care with respect to discovering and correcting any defects which may have existed, and (3) that, if there was a defect, appellee is not entitled to recover, because his opportunity for discovering such defect was equal to that of appellants. It is further insisted that, if the case should not be dismissed for the reasons noted, the cause should be reversed and remanded for error in giving plaintiff's instructions Nos. 1 and 6.

The grounds urged for dismissal are so related that they may be disposed of under a single discussion. They depend upon the effect of the evidence which, as is usual

in cases of this kind, is conflicting, but which must be considered in the light most favorable to the appellee, and the contentions for dismissal must be disregarded unless there be no substantial evidence supporting the verdict.

1. The correctness of this position depends on the competency of the testimony of the witness, R. R. Hardy, the mechanic employed by Mr. Keller to repair the car, and who discovered the defect in the tie-rod. It is argued that his testimony is wholly incompetent as evidence bearing upon the condition of the tie-rod at the time of the accident. This position is taken because of the remoteness of the time after the accident until the repairs were made and the lack of evidence showing that the car, when repaired, was in the same condition as when returned to the shops of appellant company immediately after the accident. This contention is based upon an application of the general rule that proof of the existence of a present condition or state of facts does not raise any presumption that the same condition or facts existed at a prior date. 22 C. J., § 30, p. 92. In developing the contention on this proposition, counsel for appellants argue that before the condition of the tie-rod three weeks after the wreck could be given any probative force to show that the alleged defective condition existed prior to the accident, there must be affirmative evidence that such condition did exist prior thereto, or the existence of the condition subsequent to the accident must be such as to show that in the very nature of things it must have existed prior to the accident and that there was no intervening event to explain such condition. In support of this argument we are cited to a number of our cases, among them *L. R. & F. S. Ry. Co.* v. *Eubanks*, 48 Ark. 460, 3 S. W. 808; *Butler, Gibb & Co.* v. *Henry*, 48 Ark. 551, 3 S. W. 878, and a number of others, the latest of which is *Southwestern Gas & Electric Co.* v. *May*, 190 Ark. 279, 78 S. W. 2d 387. While we approve the general rule and recognize the authority of the cases which apply it, we do not think they are controlling in the instant case. To establish the defect something more than

presumption is relied upon, for it appears that there is a well connected chain of circumstances tending to establish the defective condition of the car and the particular defect discovered by Hardy. One, Mabry, purchased the car when new from the appellants. It proved unsatisfactory from the first. He brought it back on several occasions, probably as many as twelve times in all, during the time he was driving it and while he was driving it not more than five or six thousand miles. Finally, and about two days before the car was wrecked, Mabry again brought it to the office of the motor company and announced his purpose of getting rid of it and that he proposed to trade it in on a Chevrolet. As the motor company did not wish him to change cars, it made a trade with him for his car and a new Ford which it handled. Mabry testified that the car was hard to steer, was uncertain in its movements when driving at a speed in excess of thirty miles an hour. The substance of his testimony with regard to this matter was that he thought the car unsafe to drive and didn't intend to drive it any longer. At the time of the accident the car was being driven by an experienced driver who described the manner in which the car operated after its speed was more than thirty miles per hour. This witness stated that there was a curve in the road; that he drove safely past it and when just beyond it, and when he had attained a speed of about 35 miles per hour, the right rear wheel went off the edge of the pavement; that he straightened the car up and it began to zig-zag across the road going down the road for about 150 or 200 feet after the car was again on the pavement and before it turned over. Appellee stated that the car began to weave and the right rear wheel seemed to have gotten off the road and come back on it; that the car zig-zagged across the road for a good way before it turned over. There was expert testimony to the effect that a defect such as discovered by Hardy in the steering gear would cause a movement by the car as stated by its occupants at the time of the accident. The wreck, therefore, was caused by one of two things—a defect in the steering gear of the car or neg-

ligence of the driver in allowing one of the wheels to leave the pavement and lack of skill on his part in recovering control.

The appellants contend that it was three weeks after the accident before Hardy inspected and repaired the car and during this interval the car had been driven on several occasions outside of the shop and around the block where several turns were necessary, and that the car showed no evidence of faulty steering. Also, that when the wreck first occurred the car was driven under its own power about two miles back to the motor company. As to two of these statements the evidence is in conflict. Hardy, the mechanic who made the repairs and who came from El Dorado for that purpose, testified that it was about the 18th of April when he examined the car, about thirteen days after the accident. Appellants' chief mechanic who testified in the case stated that he didn't know whether the car was driven out after it was stored following the accident, but that if it were driven out of the shop before it was repaired he didn't know anything about it and that he didn't see how it could have been driven out before it was repaired; that H. H. Hardy was the first and only man to do any work on the car after the accident.

From all of the above testimony, we think the reasonable inference is that the car was in the same condition when examined by Hardy as it was when first received in the shop following the accident and that the defect discovered by him is reasonably presumable to have existed at the time of the wreck and that this was the cause of same. According to Hardy's testimony, about two weeks after the accident he was called by Mr. Keller from El Dorado to Eudora for the purpose of repairing the wrecked car. When he first saw the car it was in Keller's place of business next to the show room. He was not informed by any one as to whether the car had been out in use since the wreck, but from its looks he thought it had not. He found, on inspection, the general condition of the car as follows: it had been hit on the right side, the posts and two doors on the right were

badly bent, and one on the left. There was a dent in the rear left corner and the frame was bent. A tie-rod was disconnected on the left side of the car lying on the floor. He found an old crack in the tie-rod at the point of its connection. This crack was about three-quarters of an inch long and a quarter of an inch wide at the top where it fitted into the socket. This damaged rod was replaced with a new one. The witness stated that at a slower rate of speed than thirty miles per hour the defect would probably have no noticeable effect upon the movement of the car, but at that rate or higher it would likely effect the movement of the car causing it to zig-zag and shimmy.

By its verdict, the jury has eliminated the contention that the accident was due to the negligence of the driver of the car and found there was a defect in the steering apparatus which occasioned the wreck. We think the evidence as above summarized is of a substantial nature such as to support the verdict of the jury.

2. It is next contended that there is no evidence to show that appellants failed to exercise due care with respect to discovering and correcting any defects that may have existed. It is true that a witness, a nephew of Mr. J. J. Keller, testified that he was employed as a mechanic for appellant company, that he made a thorough inspection of the car after it had been brought back by Mabry and on Saturday before the accident on the following day. This inspection and the adjustments which witness made related to tightening bolts, taking out the rattles, checking over the shock absorbers and front end and the steering, and to see whether the tie-rod was all right. He also testified that after the wreck he drove the car about two weeks and as rapidly as forty-five miles an hour and that he had no trouble with the steering at that time. There was evidence by another nephew of Mr. Keller tending to contradict that of Hardy relating to the changing of the old tie-rod for the new. The chief mechanic's testimony, however, does not support that of the witness who testified as to the extent

of the inspection and the nature of the adjustments. This testimony is to the effect that the examination made of the running gear of the car on Saturday before the accident on the following day was perfunctory in its nature. Witness stated that shortly after the car was brought in when repurchased from Mabry, he removed the radio and checked it over; that he didn't go into the steering gear and didn't make any examination of the tie-rod on the left side of the car any more than to just reach down and feel of the thing to see if anything was loose.

We are of the opinion that there was evidence tending to show that no reasonably careful inspection was made of that part of the car from which the trouble arose and that from the information received from Mabry, the former owner of the car, some examination of the steering apparatus—more than perfunctory—should have been made by the appellants. As to the negligence of inspection, appellants suggest that the negligence, if any, was that of a fellow servant for which appellants are not liable. This contention overlooks the duty imposed upon the master to furnish a reasonably safe place in which to work and reasonably safe appliances for the performance thereof. This is a duty primarily of the master which he may not delegate to another so as to relieve him of liability. *Gaster* v. *Hicks,* 181 Ark. 299, 25 S. W. 2d 760; *Bryant Lumber Co.* v. *Stastney,* 87 Ark. 321, 112 S. W. 740. However, there is an element of negligence under the evidence accepted by the jury for which the appellants are liable, and clearly so. That is the assurance given appellee by J. J. Keller that the car had been inspected and was in proper condition for demonstration and for a prospective purchaser to drive. This assurance by Keller was doubtless given under the assumption that a proper inspection had been made and the defect which occasioned Mabry's alarm had been corrected. On this positive statement, appellee had the right to rely especially as it was the master's duty to use ordinary care to see that the defect was discovered and repaired and for that purpose reasonable examina-

tions made and that no duty rested upon appellee himself to make such examination where defects are not obvious and plainly discoverable. *McEachin* v. *Burks,* 189 Ark. 947, 75 S. W. 2d 794; *Boyle-Farrell Land Co.* v. *Haynes,* 161 Ark. 183, 256 S. W. 43. There appears to be substantial evidence to justify the inference that the defect or danger was known or should have been known by the appellants if a reasonable inspection had been made and whether or not they took reasonable precaution to remedy the defects or obviate the danger consequent thereon is generally a question for the jury. *Dixie Bauxite* v. *Webb,* 187 Ark. 1024, 63 S. W. 2d 634.

3. We find little, if any, evidence to support the contention that appellee had equal opportunity with the appellants to discover the defect complained of. It is true that the appellee had had considerable experience with the repair of automobiles. He had worked as a mechanic for two or more years and had attended some of the Ford schools where he was instructed how to repair and assemble cars and in purchasing used cars, reliance was placed in appellee's judgment because of his previous training and employment as a mechanic. Since 1926 he had worked continuously as a salesman through a period of eleven years during which he had no connection with the mechanical department of the Eudora Motor Company. He knew that there was something wrong with Mabry's car as did also Mr. Keller and other employees of the Eudora Motor Company. It was not appellee's duty, however, to inspect the car and he did not do so. He relied upon the mechanics to make an inspection and upon the assurance of Mr. Keller that it had been done and that the car was in a safe condition for driving.

In *McEachin* v. *Yarborough,* 189 Ark. 434, 74 S. W. 2d 228, and *Kurn* v. *Faubus,* 191 Ark. 232, 84 S. W. 2d 602, the court announced the rule that where the perils of employment are known to the employer, or should be by the exercise of ordinary care, but not to the employee, no liability is incurred when the employee's knowledge equals or surpasses that of the em-

ployer. The evidence in those cases, to which the rule was applied, bears no resemblance to the evidence in the instant case, except as to that part of the rule which imposes liability where the perils of employment are known to the employer, but not to the employee.

4. Lastly, it is insisted that the court erred in giving instructions Nos. 1 and 6 at the request of the appellee. Instruction No. 1 is inexcusably long submitting matters to the jury that were not in dispute, but when it is stripped of its superfluous and immaterial declarations it cannot be said that it was inherently erroneous. The appellants did not make any specific objection beyond the objection that "defendants objected specifically to the instruction for the reason that the same is not a correct declaration of law applicable to the evidence in this case." It is insisted, however, that the effect of this instruction eliminates from the consideration of the jury whether or not appellants had exercised ordinary care in inspecting the car to ascertain defects and whether such defects could have been discovered by the exercise of ordinary care in making the inspection. Doubtless, if a specific objection had been made, the defect in the instruction would have been corrected by the trial court, and, although none was made, the instruction standing alone might be inherently erroneous. The error, however, was cured by other instructions which were explanatory of instruction No. 1. At the instance of appellants, the jury was plainly told that it must find, before liability would attach to appellants, that the defect complained of did in fact exist prior to the accident and that this was its cause; also, that the appellants failed to exercise ordinary care to discover the defective condition, and, unless these facts were found to exist, it was the duty of the jury to return a verdict in favor of the appellants. When the instructions are considered as a whole, we do not see how the jury could have been misled. Instruction No. 6 complained of is said by appellants to impose a higher duty upon them than the exercise of ordinary care. This instruction told the jury that it was the duty of appellants to make reasonable

inspection for latent defects not known to exist by the appellee and to make proper tests and inspection to discover dangers, which appellee had the right to assume had been performed, and that it was for the jury to say whether or not appellants had discharged their duty in this respect.

No specific objection was made and, without it, when instruction No. 6 is considered with the others, the use of the words "to make proper tests and inspection to discover dangers" means nothing more than such inspection as would have been made in the use of ordinary care. The word, "proper," as used in the instruction, is synonymous with "reasonable," and doubtless the court would have used that word if its attention had been called to the fact that the word "proper" might be considered by jury as imposing upon appellants a higher degree of duty than the exercise of reasonable care.

Affirmed.