McKnight *v*. Ellis.

5-719                                                    282 S. W. 2d 806

Opinion delivered October 17, 1955.

*Henry S. Wilson* and *Rieves & Smith,* for appellant.

*Hale & Fogleman,* for appellee.

J. SEABORN HOLT, Associate Justice. January 5, 1953 appellant, McKnight, entered into a written lease contract with appellee, Ellis, under the terms of which he leased 600 acres of land to Ellis to be farmed for rice in 1953. McKnight, in addition to furnishing the land for one-half the crop produced and delivered at the drier, further agreed to furnish ''All pumps, motors, and other necessary, proper and adequate equipment to provide water for said rice, including seed rice necessary for planting said acreage . . . one-half the cost of all bean poison, . . . The lessor will build and construct all necessary canals to and on said lands so that said land may be properly watered in accordance with good rice farming practice . . .''

Ellis brought this suit March 29, 1954, seeking damages against McKnight in the amount of $72,990.88 for breach of said contract. Ellis alleged in his complaint in effect that McKnight had breached the lease agreement in that he failed to furnish 600 acres of land, and in fact furnished only 300 to 325 acres of land; failed to furnish the equipment necessary to supply water in proper time to care for and make the crop and failed to build proper and adequate flumes for canals in time to seasonably furnish a proper and adequate water supply for the rice crop; failed to furnish one-half of the bean poison; failed

to provide fuel; and failed to furnish seed rice at proper times and in proper quantities, and by an amendment alleged that the defendant failed to furnish a power unit and a connecting unit at the well; that the same should have been furnished during the first fifteen days of April; that the flumes and canals were never completed in time to properly water the crop of rice; and that they should have been built prior to March 10 in order to permit same to settle and compact in order to hold and move a head of water.

McKnight answered, denying all material allegations in appellee's complaint and in a cross-complaint sought $19,000.00 damages for alleged failure on appellee's part to perform the lease agreement.

A jury trial resulted in a verdict for Ellis of $11,-500.00. From the judgment awarding Ellis this amount, and directing that McKnight "Take nothing by reason of his cross-complaint," is this appeal.

For reversal appellant relies on the following points.

"1.   The Court erred in overruling the request of the appellant for a directed verdict at the conclusion of the plaintiff's testimony in reference to the plaintiff's claim for damages by reason of the alleged breach of the contract to permit the plaintiff to work the Norfleet lands.

"2.   The Court erred in including in the Court's instruction No. 5 over the objection of appellant the following language: 'together with such a sum of money as you find from a preponderance of the evidence will compensate the plaintiff for his work and labor, if any, upon the Norfleet lands in readying them for cultivation and unless you do so find your verdict will be for the defendant on this count.'

"3.   The Court erred in refusing appellant's requested instruction No. 1 as follows:   'The jury are instructed that the plaintiff in his complaint does not claim that the well furnished by the defendant was not capable of delivering an adequate amount of water to the rice

crop and that you will disregard and consider for no purpose whatever testimony as to the construction of another well in the year 1954 on the lands of the defendant.'

"4. The Court erred in overruling appellant's motion to strike the testimony relative to another well having been placed on the McKnight lands.

"5. The Court erred in permitting the introduction in evidence, over the objections of appellant, of changes and improvements made in reference to the lands subsequent to the year 1953."

## POINTS 1 and 2

It appears undisputed that McKnight took 300 acres of the leased land (known as the Norfleet Place) away from Ellis the last of May, and farmed it himself. It was McKnight's theory that he was justified in so doing because he (Ellis) had failed to perform his part of the contract. It was for the jury to say, under proper instructions, whether Ellis was entitled to (nominal) damages from McKnight under this alleged breach. We hold that there was substantial evidence to support damages for at least $200.00. Ellis testified, without any objection by appellant, that of $300.00 he spent in ditching and burning on the leased land, $200.00 was spent on the Norfleet place above mentioned.

He further testified that he had the tractors, combine, disks, dike plows, seeders, harrows, trucks, grain buggies and equipment necessary to work the Norfleet land; and the necessary labor; that he had done some ditching on the land and burning off the fields; was ready to start work on this Norfleet land the day McKnight took over during the planting season; that McKnight did not contend that Ellis had failed to perform, but said that "we would work out something . . . but never did." Other witnesses tended to corroborate Ellis. On this testimony the Court was justified in instructing the jury as above indicated that their verdict be for "such a sum of money as you find from a preponderance of the evidence will compensate the plaintiff for his work and labor, if any, upon the Norfleet lands in

readying them for cultivation.'' We therefore conclude that these two alleged errors are untenable.

## POINTS 3 and 4

Appellant next contends that the Court erred in refusing his instruction No. 1 as set out above in Point 3 in his points relied upon, and in refusing his request to strike certain testimony relating to construction of another well subsequent to the 1953 season. It appears that in 1954, following the 1953 rice crop season, appellant had constructed another well on higher land adjoining that here involved and that proof of construction of this new well was allowed to go to the jury. In considering these points we must bear in mind that appellee Ellis concedes that the 16" well on the 600 acres in 1953 was adequate to furnish sufficient water if all flumes and canals had been in proper working condition to carry and spread the water. Appellant's son-in-law, Jack Ray, testified that he watered the 320 acres in 1954 which Ellis farmed in 1953 with the same flumes and canals used by Ellis but two of appellant's employees testified that the old flumes would not carry the water over the land and new flumes and a relift pump had to be used.

There was also evidence that, due to unprecedented dry weather in 1953, the flumes and canals cracked in places and absorbed more water than usual, thus reducing the amount of water necessary for the rice crop. Ellis' complaint did allege that he was not furnished enough flumes and water. The following colloquy between Court and Counsel occurred during the trial: Court: ''Now, I don't find in the complaint where there was insufficient water coming from the well. Mr. Hale: From the well itself? Have not so plead, don't claim that. The Court: All right. Mr. Rieves: May I ask the Court, if counsel is contending the well furnished him wasn't sufficient and didn't supply an adequate amount of water to the flume? The Court: Insofar as the issues in the case are concerned, as the jury will get it to determine when it is presented to them, they will be limited to the allegations in the pleadings, which do not include any statement as to the inadequacy of the water

coming from the well. Mr. Rieves: If there is any such contention, I want to plead surprise. Mr. Hale: We have made no such contention, if the Court please, and still don't. Mr. Rieves: Then, I should like the jury to be instructed at this time not to consider any evidence relative to another well to put on the 160 acres. The Court: Motion to strike the testimony is denied. May consider it together with all the other evidence in the case regarding the issues left them for consideration. Mr. Rieves: Will Your Honor note our exceptions, please.''

Here the evidence tends to show that the elevations, location of canals, flumes, and direction of slopes in 1953 of the lands involved were unchanged in 1954 from that condition in 1953 and that the new well (which was 12″) was constructed on high ground. The 16″ well would have been adequate but for improper and inadequate flumes and canals as alleged in the complaint.

The general rule is that evidence of a prior condition may be shown by evidence of a condition subsequent where the condition has not changed and where the lapse of time was not of sufficient duration to make any material difference . . . ''Where, from the nature of the situation, the condition is of such a permanent character that the lapse of time would not make material difference, and it would be improbable that change had occurred, testimony as to conditions after the happening of an event is relevant to show the conditions existing at the time.'' 80 A. L. R., page 441, § 2.

### POINT 5

As to appellant's final contention that the Court erred in admitting evidence ''of changes and improvements made in reference to the lands subsequent to 1953,'' what we have already said relative to appellant's points and contentions above applies with equal force to this last contention and therefore, we hold that it cannot be sustained.

On the whole case we conclude that there was substantial evidence to support allegations in appellee's complaint of a breach of contract on the part of appellant, and the damages awarded appellee. Affirmed.