TRANSIT HOMES, INC. and
Elgin W. JONES *v.*
John H. BELLAMY, Jr. and Grace BELLAMY

83-191                                        671 S.W.2d 153

Supreme Court of Arkansas
Opinion delivered May 21, 1984
[Opinion Amended on Denial of Rehearing July 2, 1984.]

*Pollard & Cavaneau* and *Rieves & Mayton,* by: *Elton A.*

*Rieves, III, Connie Lewis Mayton,* and *Jerry Cavaneau,* for appellants.

*Daggett, Van Dover, Donovan & Cahoon,* by: *Robert J. Donovan* and *Jesse P. Daggett,* for appellees.

JOHN I. PURTLE, Justice. A Lee County jury awarded John and Grace Bellamy $825,000 damages arising out of an automobile accident. The jury also awarded the Veterans Administration the sum of $95,500 on its subrogation claim for the cost of medical services rendered as a result of the injuries suffered by John Bellamy. Both parties appeal. About a dozen points are argued by appellant for reversal, and cross appellant alleges five points of error. We will not set them out here individually but we will consider all of the arguments. We find prejudicial error and reverse and remand for a new trial.

Transit Homes, Inc. contracted to move a mobile home from Missouri to Texas. The driver, Elgin W. Jones, pulled the mobile home along Interstate Highway 40 between Brinkley and Biscoe, Arkansas. A wheel from a mobile home was found lying in the traffic lane on I-40. A wheel was missing from the mobile home being pulled by Elgin W. Jones. The wheel was the same type as the other wheels underneath the mobile home being transported by appellants. The tire and wheel were in the outside lane for westbound traffic on I-40. The mobile home was stopped on the westbound shoulder of the road about a mile west of the tire and wheel when this incident occurred.

John Bellamy was westbound on I-40 in his specially equipped van with his wife, Grace, riding with him. He had been classified as a quadriplegic since he was injured in an automobile accident in 1951. The van was modified in such a manner as to allow Bellamy to steer it by use of one arm inserted into a device on the steering wheel. Bellamy first observed an object in his lane of traffic when he was about 150 feet from it. At that time he released the accelerator but did nothing else because he intended to pass over what he at that time perceived to be a retread from a tire. However, when he was about 60 feet from it his wife recognized it was a

wheel and warned him about it. His final decision was to swerve to the right shoulder and drive past the tire and wheel. However, he failed to clear the object and when his left wheels struck it, the van flipped over and injured the appellees. At the time of this occurrence the surface of the highway was either wet or damp.

Appellants' first assignment of error is that the court improperly failed to grant a new trial. The tenth and eleventh arguments are also procedural. Therefore, we consider the three points together. Appellees failed to respond to appellants' motion for a new trial within the time provided by ARCP 78 (b) which requires a response by a respondent opposing a pleading or a motion. ARCP 55 (a) requires the court to enter default judgment against a party who fails to defend when a judgment for affirmative relief is sought against him. ARCP 59 deals with new trials and amendment of judgment. Section (d) states: "When a motion for a new trial is based upon affidavits, they shall be filed with the motion. The opposing party shall have 10 days after service within which to file opposing affidavits which period may be extended for an additional period not exceeding 20 days . . ." We know of no provisions or precedent which would allow a new trial by default. Certainly ARCP 59 does not provide for such default and it is the rule which covers the grounds and procedures for a new trial. The trial court is charged with exercising discretion in the matter of granting a new trial. To allow a new trial by default would be to remove the discretion of the trial court in the matter. ARCP 59 does not require a response to a motion for a new trial. Of course if affidavits are filed then it becomes incumbent upon the opposing party to respond with opposing affidavits and a pleading.

The appellants also argue that the trial court erred in denying the motion to bifurcate the trial as to liability and damages. ARCP 42 (b) specifically provides that a trial court may bifurcate any separate issue presented in the case. This rule was considered in the case of *Hunter* v. *McDaniel Bros. Const. Co.,* 274 Ark. 178, 623 S.W.2d 196 (1981). In *Hunter* we specifically held that it was within the discretion of the trial court to separate the liability phase from the damage

phase of a trial. In *Hunter* we stated: "The purpose of Rule 42 (b) is to further convenience, avoid delay and prejudice, and serve the needs of justice." We then held that absent an abuse of discretion the decision of the trial court would not be disturbed on appeal. We cannot say that the trial court abused its discretion in this matter.

Appellants insist the court erred in failing to grant a new trial after both parties had filed notice of appeal. Appellees' notice was termed cross-appeal. We know of no case which requires the trial court to grant a new trial simply because both sides give notice of appeal. The fact that appellees designated their appeal as a "protective appeal" is of no significance. ARCP 61 states that harmless error such as a defect in a ruling or order is not grounds for setting aside and vacating a verdict. In looking at substance over form we can readily see that appellees would be most happy if the judgment were affirmed in toto. Also, there is merit to some of the arguments presented in the "protective appeal." We do not find that it was error for the trial court to fail to grant a new trial because both parties gave notice of appeal.

Six of appellants' arguments for reversal relate to evidence. Therefore, these points will now be discussed. The first and perhaps strongest argument presented here is that the court erred in admitting evidence of the condition of the mobile home subsequent to the occurrence here in question. There seems to be a considerable dispute on the facts as to whether the mobile home was equipped with defective wheels. Much of the evidence relating to the subsequent condition of the mobile home was contained in an evidentiary deposition at which it was stipulated that "all objections are to be made at the time the deposition is being taken." Forty-two photographs of the mobile home were taken at the new location in Texas. Objections to the introduction of these photographs were not made at the time of the deposition. The photos were made nine months after the accident and after the mobile home had been towed another 600 or 700 miles from the scene of the accident. Generally speaking, subsequent conditions are not admissible for the purpose of showing the condition of the object or instrument at the time of the occurrence. *Eudora*

*Motor Company* v. *Womack,* 195 Ark. 74, 111 S.W.2d 530 (1937). It is the general rule that evidence of a prior condition may be shown by evidence of a subsequent condition only where the condition has not changed and where the lapse of time was not of sufficient duration to make a material difference. *McKnight* v. *Ellis,* 225 Ark. 384, 282 S.W.2d 806 (1955). In the present case the plaintiffs' expert testimony indicated that all the damages shown in the photos could have occurred after the accident between Brinkley and Biscoe. As was stated in *Eudora Motor Co.* v. *Womack,* supra, "proof of the existence of a present condition or state of facts does not raise any presumption that the same condition or facts existed at a prior date." Applying this test to the facts of this case we do not think it was proper to admit the subsequent condition proof. We must also dispose of the appellees' argument that the stipulation of the parties, at the time the deposition was taken, is controlling and that all objections to the relevancy of the evidence were waived unless objection thereto was made at the time of the deposition. Use of depositions is generally controlled by ARCP 32. ARCP 32 (c) (3) (A) states: "Objections to the competency of a witness or to the competency, relevancy or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been *obviated* or removed if presented at that time." (Our emphasis.) This rule also states that objections may be made at the time the deposition is offered into evidence subject to the provisions of ARCP 28 (b). ARCP 29 permits stipulations regarding discovery procedures. It reads as follows:

> Unless the court orders otherwise, the parties may by written stipulation (1) provide that depositions may be taken before any person, at any time or place, upon any notice and in any manner and when so taken may be used like any other depositions; and (2) modify the procedures provided by these rules for other methods of discovery.

The reporter's notes following ARCP 29 state that, "[s]hould agreements of counsel get out of hand, the court has the power under Rule 29 to overrule or reject

any stipulation or agreement of counsel. Therefore, any problems which may arise in this area may be corrected by the court on a case by case basis."

Appellants argue the court erred in refusing to permit proof of appellee John Bellamy's prior driving record. All parties agree that the general rule is that evidence of prior accidents may not be introduced for the purpose of proving negligence. During voir dire of the jury, counsel for appellees repeatedly asked prospective jurors whether they had a preconceived notion that handicapped drivers were not as safe as drivers without a handicap. At one point a juror asked, "What was his past driving record?" The court responded, "That, sir, is not part of this jury selection." The exception to the general rule that prior acts of negligence are inadmissible is in a case where the opposite testimony is presented by the other side. We have often said that where one party introduces incompetent testimony he cannot complain if the other party is allowed to introduce evidence directed to the same issue. *Ark. State Highway Comm'n.* v. *Pittman,* 251 Ark. 709, 473 S.W.2d 924 (1971). Evidence introduced by the appellees was to the effect that John Bellamy held a valid driver's license and that some handicapped drivers are better than average drivers. This evidence coupled with the questions asked during voir dire opened the gate for the appellants to attempt to show negligence because of prior conduct in driving. On retrial this matter should not become a problem.

The court refused to allow evidence that Bellamy was taking certain medications and evidence of the effect such drugs would have on his driving ability. He was taking valium, diabinese, anturane, and pro-banthine. The trial court allowed proof that Bellamy was taking valium but refused to allow proof of the other drugs or their common effects on people. No doubt the use of valium with other drugs will sometimes produce a different effect than if taken alone. Uniform R. Evid. 401 states that relevant evidence is evidence having a tendency to make the existence of any consequential fact more probable or less probable than it would be without the evidence. In the case of *Watson v. Frierson,* 272 Ark. 316, 613 S.W.2d 824 (1981) we held that

evidence establishing levels of alcohol in a person's blood stream was proper. A similar decision was rendered in a Workers' Compensation case. *St. Paul Ins. Co. v. Touzin,* 267 Ark. 539, 592 S.W.2d 447 (1980). If evidence of medication is introduced by either party at the next trial the appellee will be free to introduce evidence that his driving ability was not diminished because of the ingestion of these drugs.

Appellants argue that the court erred in permitting witness John Bentley to render an opinion based upon an experiment where no proper foundation was laid. Bentley's opinion was that Bellamy could not have avoided striking the wheel under the existing circumstances. In order to recreate the exact circumstances it would have to have been shown that the coefficient of friction at the time of the test was exactly the same as that at the time of the accident. It is likely impossible to create such a condition. Therefore, the rule in Arkansas is that such experiments or tests must be conducted under conditions substantially the same as the conditions in existence at the time of the occurrence in issue. *Henshaw v. Henderson,* 235 Ark. 130, 359 S.W.2d 436 (1962). The conditions at the time of this occurrence were described differently by various witnesses. It is sufficient if the experiments are conducted under circumstances which are substantially similar to those at the time of the occurrence. *Dritt v. Morris,* 235 Ark. 40, 357 S.W.2d 13 (1962). Therefore, we are of the opinion that it was not improper to allow the expert's testimony, and the variances in the existing conditions were matters of credibility.

It is also argued that the court erred in allowing an economic expert to testify about the amount of future medical expense. Witness Huntley calculated that the expense for future hospital services would range between $709,371.41 and $1,560,772.00. The argument is that no proper foundation was laid prior to presentation of this evidence. Another witness testified that Bellamy would require hospitalization 40% of the time. This witness admitted on cross-examination that Bellamy suffered from many serious illnesses and had spent much of his time in the past in a hospital.

There does not appear to be any clear-cut testimony that any particular amount of the time Bellamy expects to spend in the hospital is attributable to this occurrence. Appellants had initially objected by motion in limine to testimony regarding future hospital and medical expense. Objections were also raised at the trial. It is quite clear that appellants properly objected to this testimony. The testimony as submitted in the trial of this case was improper because a proper foundation was not established before the testimony was given. Because the proof and presentation of evidence will undoubtedly not be the same on retrial we cannot say that this evidence may not be presented in proper form.

The jury was permitted to view a videotape depicting a "day in the life of John H. Bellamy, Jr." Naturally it was impossible to separate the injuries resulting from the accident in question and those received previously. The prior injuries were more pronounced in the film than were the ones under consideration. He was a quadriplegic before the accident and had to be lifted from his bed and his chair very much in the same manner as was done in the "day in the life" film. Whether to admit such evidence generally lies within the sound discretion of the trial court. However, due to the special circumstances of this case the prejudicial effect of this evidence obviously outweighed its probative value.

Appellants' final two arguments question the propriety of the jury instructions. Appellants contend the trial court erred in instructing the jury on sudden emergency. The court gave AMI 614 as instruction number 22 over the general and specific objection of appellants. The primary objection was on the grounds that there was no evidence of a sudden emergency. Before a person is entitled to the benefit of having AMI 614 given he must have been aware of the danger and have perceived the emergency and acted in accordance with the stress caused by the danger. If the instruction is warranted it informs the jury that the actor is not held to the same judgment "required of him in calmer and more deliberate moments." *Bardwell* v. *McLaughlin*, 257 Ark. 782, 520 S.W.2d 277 (1975). There is evidence in this case which if believed by the jury could have created a sudden emergency. Mathematical computations indicated

that Bellamy would reach the object in the road in less than 2 seconds after he observed it. He testified he was driving 55 m.p.h. when the tire became visible to him and that he thought of pulling to his left but found a vehicle blocking a lane change. He then disengaged the cruise control and tried to decide what to do. He as in a position where a speedy decision had to be made. We cannot say from the facts in this case that he was not confronted with a sudden emergency. We find no error in the giving of this instruction.

The matter of future medical expenses as an element of John Bellamy's damages is disputed. By instruction number 26 (AMI 2201) the jury was instructed, among other things, that Bellamy should be allowed to recover the present value of future medical care, treatment and services. The Veterans Administration had intervened in the case pursuant to 42 U.S.C. § 2651 for the cost of both past and future medical services. However, the Veterans Administration apparently abandoned its claim for the cost of future services. It was awarded $95,000 for the cost of past medical services. It has been held in other jurisdictions that when the government fails to pursue its remedy in such a case the damages may be recovered by the plaintiff. *Arvin v. Patterson,* 427 S.W.2d 643 (Tx. Civ. App., 1968); *Whitaker v. Talbot,* 122 Ga. App. 493, 177 S.E.2d 381 (1970). Therefore, upon retrial if the Veterans Administration does not pursue its subrogation claim it will again be proper to give this instruction.

The appellees cross-appeal and argue: 1) that the court improperly excluded from evidence a photograph of the decal affixed to the side of the mobile home; 2) that the court erred in refusing to direct a verdict on the issue of liability; 3) that the court improperly refused to give AMI 611; 4) that it was error to admit a videotape made in California; and 5) that the court erred in giving appellants credit for the allotment given to John Bellamy in aid and attendance.

In the first instance, evidence concerning the decal affixed to the mobile home was relevant for the purpose of identifying the home in relation to other matters. We see no reason why this evidence should be excluded. Upon retrial this evidence should be admitted.

The facts of the case clearly show that the court correctly overruled appellees' motion for a directed verdict. The appellants refused to admit that the wheel and tire belonged to the unit which they were moving. Neither the legislature nor this court has adopted the theory of strict liability in a case of this nature. Therefore, strict liability is inapplicable on retrial of this case. The mere happening of an accident is not conclusive of liability on the part of anyone even in a strict liability context. Again, this is a matter which will probably not be presented in the same manner on retrial. As presented in the original trial there were questions of fact to be decided by the jury. It was not error to refuse to direct a verdict.

The court refused to give AMI 611 which concerns the doctrine of res ipsa loquitur. This court has frequently held that in order for res ipsa to apply, the plaintiff must be free from negligence. *Moon Distributors* v. *White*, 245 Ark. 627, 434 S.W.2d 56 (1968). The doctrine should be applied where the evidence shows that the defendant alone was in control of the object causing the loss. Therefore, we think the evidence was in such a state that the court properly exercised its discretion in refusing to give AMI 611.

As to the appellants' videotape, we have partially discussed this matter in preceding paragraphs. We addressed the same type of evidence in *Carr* v. *Suzuki Motor Co.*, 280 Ark. 1, 655 S.W.2d 364 (1983). There we stated, "It is well settled that when a test or experiment is an attempt to re-enact the original happening, the essential elements of the experiment must be substantially similar to those existing at the time of the accident . . . [A]lthough it was not necessary that conditions of an experiment be identical to those existing at the time of the occurrence, there must be a substantial similarity, and the variation must not be likely to confuse and mislead the jury." Admittedly the circumstances surrounding the test were not duplicated, but they were so close that the trial court properly exercised its discretion in permitting the videotape to be introduced.

We do not think the court erred in allowing appellants credit for the $1,257.00 which the Veterans Administration was paying Bellamy in aid and attendance expenses. This

sum was being paid prior to the occurrence here under consideration. It is not collateral income being received on account of the injuries received in the accident here in question. If this amount was being paid to Bellamy as a result of injuries received in this occurrence, it would have been subject to our collateral source rule. See *Amos, Adm'x v. Stroud & Salmon,* 252 Ark. 1100, 482 S.W.2d 592 (1972).

For the reasons stated the case is reversed and remanded with directions to retry the case in a manner not inconsistent with this opinion.

Reversed and remanded.

HICKMAN, J., not participating.

HAYS, J., dissents.

STEELE HAYS, Justice, dissenting. This case is being remanded for a second trial entirely on evidentiary rulings which neither individually nor collectively warrant reversal. The case was tried fairly and the appellants had the opportunity to present their proof on an equal footing with appellees. Thus the litigants, the county and the system itself are being put to the heavy burden of a second trial to no real purpose, as the proof fully supports the verdict.

We have recognized that the admissibility of evidence is an inexact science at best, that the relevancy of evidence is a matter for the trial court's discretion, subject only to the very limited review applicable to discretionary rulings. *Hamblin v. State,* 268 Ark. 497, 597 S.W.2d 589 (1980). Even when it can be said the trial court was technically incorrect in admitting or excluding evidence it is reversible *only* if we can determine on appeal that the rights of one party were *substantially* affected by such evidence. Unif. R. Evid. 103. None of the three points relied on for reversal rise to that level.

It is said that evidence of the condition of the underparts of the mobile home some nine months after the collision should not have been received to show the wheel was not lost

unavoidably, but due to appellant's negligence. In the first place, the conditions described beneath the mobile home were not the kind that would be materially altered by the passage of time or distance, and the trial judge was in a far better position than we are to determine whether this evidence should have been allowed. In the second place, the majority gives no answer at all to appellees' argument that appellants should have objected when the evidentiary deposition of the witness by whom this proof was offered was taken under a written stipulation that all objections would be stated during the deposition. The record supports appellees' assertion that this was the stipulation and had appellants made timely objection, appellees might have been able to show that the later conditions were unchanged from the time of the accident, at least they were entitled to that opportunity under the stipulation. Finally, even if this evidence is excluded, the outcome is not dependent on it, as there was no shortage of proof from which the jury could reasonably infer that the wheel was lost through fault alone.

Another evidentiary error wrongfully charged to the trial court involves showing a videotape of John H. Bellamy, Jr., who was unable to attend the trial. The film is just over twenty minutes long, with no audio except background conversation. It shows John Bellamy lying in a hospital bed having his teeth brushed, being shaved by an orderly and finally being placed in a harness to be lifted by a mechanical device from his bed into a wheelchair. Each of these events would have been admissible if verbally described at the trial and the use of this type of evidence is a matter for the trial court's discretion. Appellants' arguments that Bellamy's prior physical condition render this evidence inadmissible go to the weight, I believe, rather than to admissibility. Whatever may be said of the film, it is essentially innocuous and by no stretch of reasoning can it be labelled substantially prejudicial. Certainly its reception does not warrant a reversal.

Next, the majority concludes that an economic expert should not have been allowed to estimate the cost of future hospital services. The witness, Pat Huntley, based his estimates on the testimony of Dr. Roy McGlamery that John

Bellamy would require hospitalization forty percent of the time. Appellants submit that appellees failed to lay a proper foundation for this evidence by establishing what part of such hospitalization would be attributable to pre-existing conditions of the appellee. But Grace Bellamy testified that John Bellamy's general health before the accident was good, but for an occasional cold; that he was hospitalized for one or two weeks each year for an annual checkup, and it is clear from Dr. McGlamery's testimony that, unlike others with a similar handicap, John Bellamy did not require hospitalization. The trial court heard the testimony in its entirety, whereas we see only abstracted portions of it and it is far from clear that this testimony, which was offered only as an estimate for the jury's consideration, should not have been admitted. I would not reverse on so slender a ground.

It is not clear whether the majority would reverse on two other points of contention, i.e. the prior driving record of John Bellamy and the exclusion of proffered testimony as to the side effects of medications being taken by Bellamy at the time of the accident. The weakness of the latter proof is that the side effects were admittedly only "possible" there was no attempt to show that Bellamy experienced any of the ill effects which sometimes accompany these medications. As to the driving history, appellant concedes such proof is not competent to show negligence in a latter collision, but urges that appellees opened the door for this proof. The argument is wholly - without substance - neither the trial judge's comment on voir dire, nor the remark of a witness for Bellamy that *"some* handicapped persons are better than average drivers because they are aware of their deficiencies and compensate for it" were of any real consequence, certainly insufficient grounds for retrial. Minor incidents of this sort intersperse almost all trials of any length or complexity and the trial court is a far better judge of the impact of such things.

Giving appellants' arguments all possible weight, there is no sound basis for concluding that appellants' case was *substantially affected* to their prejudice as required by the rule cited above.