James Odis OXFORD, Jr. *v.* Donald G. HAMILTON and
Snap-On Tools Corp.

88-209                                        763 S.W.2d 83

Supreme Court of Arkansas
Opinion delivered January 30, 1989

*Odom, Elliot & Martin,* by: *Don R. Elliot, Jr.; Jeff Watson,* for appellant.

*Roy & Lambert,* for appellee Donald G. Hamilton.

*Bassett Law Firm,* by: *W. W. Bassett, Jr.,* and *Angela M. Doss,* for appellee Snap-On Tools Corp.

DARRELL HICKMAN, Justice. This is an automobile accident case. The appellant was seriously injured when his car collided with a truck driven by the appellee, Donald Hamilton, who was a dealer for Snap-On Tools Corporation. The jury found the appellant 90 % negligent and Hamilton 10 % negligent. Snap-On Tools had been dismissed as a party on a motion for summary judgment.

Oxford appeals, raising four issues. Finding his arguments meritless, we affirm the jury's verdict.

Immediately after the accident, Oxford was taken to the emergency room. A blood alcohol test was ordered by the attending physician, and it showed the alcohol content in Oxford's blood to be .174. The first issue is whether the test result should have been introduced into evidence at trial. Oxford claims it was a privileged communication between him and his doctor and therefore inadmissible under A.R.E. Rule 503.

Had this case arisen before the adoption of the Uniform Rules of Evidence, undoubtedly the test results would have been excluded. The physician/patient privilege was governed by Ark. Stat. Ann. § 28-607 (1947). Under that law, any information acquired from a patient while a doctor or nurse attended him and any information necessary to enable the doctor or the nurse to prescribe or do any act for the patient as a surgeon or trained nurse was protected.

Based on that statute, we held in *Ragsdale v. State,* 245 Ark. 296, 432 S.W.2d 11 (1968), that when a blood alcohol test was ordered by a physician, the result of the test was inadmissible. In *Freeman v. State,* 258 Ark. 617, 527 S.W.2d 909 (1975), a doctor's testimony regarding the removal of a bullet from Freeman's abdomen was held inadmissible. The *Freeman* opinion made it clear that the privilege protected *information gained* by

means other than direct communication with the patient.

But these two cases are no longer the law. The enactment of the Uniform Rules of Evidence in 1976 significantly changed Arkansas law regarding physician/patient privilege, and we so held in *Baker* v. *State*, 276 Ark. 193, 637 S.W.2d 252 (1982). In that case, Baker sought treatment for gonorrhea and claimed the fact that he had been so treated was privileged.

We originally held that the fact Baker had been tested was privileged, but we changed our mind on rehearing. In a substituted opinion we recognized the law had been changed:

> The legislature made a significant change by adopting a more sensible rule and on rehearing we recognize that change. The rule not only applies to criminal cases but civil as well.

While the former law protected "any information," the new rule granted the privilege only to confidential communications. We held that "the real protection is aimed at preventing a doctor from repeating what a patient told him in confidence." Justice Purtle recognized in his dissent that we do not interpret the rule to protect a physician's "description of the injuries or ailments or disease."

The court of appeals relied on our decision in *Baker* in *Barker* v. *State*, 21 Ark. App. 56, 728 S.W.2d 204 (1987). Barker had testified that he was attacked first by the man he killed. A physician was allowed to testify that he examined Barker and found no serious injuries or abrasions on him. More recently in *Bussard* v. *State*, 295 Ark. 72, 747 S.W.2d 71 (1988), we reaffirmed our interpretation of Rule 503. The appellant had been taken to the hospital for treatment of a gunshot wound. The bullet taken from his body was matched with a gun found at the scene of the crime. The appellant's doctor was allowed to testify about removing the bullet.

We hold that the result of the blood test was not a confidential communication and was properly admitted into evidence.[1] There are courts which would reach a different result.

---

[1] The appellant's reliance on *Mosley* v. *State*, 22 Ark. App. 29, 732 S.W.2d 861

*See State* v. *Pitchford*, 10 Kan. App. 293, 697 P.2d 896 (1985); *In re M.P.C.,* 165 N.J. Super. 131, 397 A.2d 1092 (1979). But we have made it clear how we interpret Rule 503 and leading authorities on evidence would agree with our interpretation. *See* E. Cleary, *McCormick on Evidence* § 105, at 258-60 (3d ed. 1984); 8 J. Wigmore, *Evidence in Trials at Common Law* § 2380a, at 828-32 (McNaughton Rev. 1961).

The second issue concerns the introduction of medical records which reflected Oxford's history of heavy drinking and alcoholism.[2] The objection was that the evidence was irrelevant or at least more prejudicial than probative.

This was a civil suit in which Oxford sued for damages for future pain and suffering, loss of future earnings, and loss of earning capacity. The jury was instructed that, in computing the appellant's life expectancy, it could consider the mortality table "in connection with other evidence relating to the probable life expectancy of [the appellant], including evidence of his occupation, health habits, and other activities." *See* AMI 2218. Two doctors testified that alcohol could shorten one's life expectancy due to the damage it causes to various body organs.

■■ The trial court has discretion in determining the relevance of evidence and in gauging its probative value against unfair prejudice. *Simpson* v. *Hurt*, 294 Ark. 41, 740 S.W.2d 618 (1987). Given the fact that evidence of the appellant's habits was useful and even necessary to assist the jury in determining his life expectancy, we find no abuse of discretion. *See Pearce* v. *Fletcher*, 74 N.C. App. 543, 328 S.W.2d 889 (1985).

■■ The appellant's third argument is that the court should have granted a mistrial when defense counsel remarked in the opening statement that one of his witnesses had been threatened. A mistrial is a drastic remedy only to be granted when no other remedy exists, and the trial court has wide discretion dealing with a motion for a mistrial. *Jim Halsey Co.* v. *Bonar*, 284

---

(1987), is misplaced. That case did not involve the physician/patient privilege. It involved the Hospital Records Act, Ark. Code Ann. § 16-46-301 to 308 (1987).

[2] It is also alleged there was error in permitting evidence of Oxford's purchase of alcoholic beverages on other occasions to be introduced. The record does not reflect any mention of this evidence at trial.

516

Ark. 461, 683 S.W.2d 898 (1985). Only one mention was made of the alleged threat, and the trial judge gave a cautionary instruction. The trial judge was in the best position to determine the effect of the remark on the jury.

Finally, the appellant claims it was error to grant summary judgment in favor of Snap-On Tools. The appellant alleged that the appellee Hamilton was acting as an agent, servant and employee of Snap-On when the accident occurred. Since the jury determined Hamilton was not liable in the accident, there was no liability to impute to Snap-On, even if it had remained in the lawsuit. Since we are affirming the jury's verdict, we do not address this issue.

Affirmed.