Dr. Robert BURNETT v. Scott FOWLER

93-681                                          869 S.W.2d 694

Supreme Court of Arkansas
Opinion delivered January 31, 1994
[Rehearing denied March 7, 1994.*]

*Corbin, J., not participating.

*Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, by: *Victor Hlvanika* and *Jeffery C. Lewis*, for appellant.

*Edmund M. Thomas* and *Compton, Prewitt, Thomas & Hickey*, by: *Robert C. Compton*, for appellee.

DAVID NEWBERN, Justice. Scott Fowler, the appellee, sued Dr. Robert Burnett, the appellant, for medical malpractice. A jury returned a verdict in favor of Dr. Burnett. The question before us is whether the Trial Court abused his discretion in granting a new trial. We hold there was no abuse of discretion and affirm.

Mr. Fowler broke an ankle playing racquetball. The ankle was repaired using a temporary metal plate and four metal screws to facilitate healing. Dr. Burnett supervised administration of a general anesthetic when Mr. Fowler returned to the hospital to have the metal pieces removed. After the surgery Mr. Fowler apparently awakened and was alert for a time, but then he went back to sleep. There was conflicting evidence about whether, during the subsequent time, Mr. Fowler showed signs of losing the use of his right arm and leg. His mother, who was with him during the recovery period, said he suffered seizures. He vomited and was incontinent. Dr. Burnett continuously monitored Mr. Fowler's condition.

At one point Dr. Burnett took Mr. Fowler's father aside and asked if he knew if Scott Fowler had taken any drugs about which the doctor might not be aware. The elder Mr. Fowler said,

"Scott smokes marijuana occasionally, and he may have smoked marijuana the morning of the surgery."

After further tests, a neurologist was called and a CT scan performed, revealing bleeding in the area of the brain. A neurosurgeon opened the skull and removed the blood, and testimony showed Mr. Fowler was left with some mental and physical disabilities.

The issue before the jury was whether Dr. Burnett acted properly. It was alleged that he took too long to discover the brain problem. There was expert testimony on both sides of that issue. There was no contention that the evidence of marijuana usage had any effect on Mr. Fowler's physical injury allegedly suffered as a result of delay in proper diagnosis and treatment.

Before the trial, Mr. Fowler filed a written motion in limine to prevent the introduction of records of a rehabilitation program Mr. Fowler had attended which showed his enrollment in a "substance abuse program." The motion closed with these words:

> The Plaintiff asks that this Motion in Limine be granted and that the Defendant be directed not to in any way refer to "alcohol and marijuana abuse" on the part of the Plaintiff, and that any records that may be introduced referring to any such "alcohol and marijuana abuse" be stricken and not presented to the jury.

The record does not show a ruling on the written motion, but the parties entered an "Agreed Statement of Evidence When No Report Was Made." The statement says that, in a discussion of the motion in limine, Dr. Burnett's counsel said he did not plan to introduce evidence of the rehabilitation substance abuse program without first seeking permission of the Court. Mr. Fowler's counsel orally expanded the motion to include any hospital records about the conversation between Dr. Burnett and the elder Mr. Fowler concerning marijuana usage. The Trial Court orally overruled the motion with respect to the hospital records.

Mr. Fowler's counsel asked the jurors during voir dire if they could be fair and impartial despite evidence that Mr. Fowler had occasionally used marijuana.

After Mr. Fowler's counsel had completed his direct exam-

ination of Mr. Fowler, Dr. Burnett's counsel approached the bench and said he intended to introduce evidence of the rehabilitation substance abuse program. Mr. Fowler's counsel asked to continue his direct examination and asked if it were on record that his motion in limine had been overruled. The Trial Court assured him it was overruled on the record. Mr. Fowler then testified he had used marijuana about five times a week.

Thereafter, there were occasional references to the marijuana usage. During Mr. Fowler's case in chief, Dr. Burnett testified he had no evidence that "any drug" caused Mr. Fowler's problem. Mr. Marsh, an economics consultant called by Mr. Fowler to testify about his economic prospects before and after the injury testified on cross-examination that he had known nothing about Mr. Fowler's drug use, and that it might or might not have a negative impact on earning capacity and would have a negative effect on employability.

Dr. Derrer, an expert witness for Dr. Burnett, testified that knowledge of Mr. Fowler's drug usage would increase the need for conducting a toxicity screen but that marijuana was no part either of Mr. Fowler's problem or the approach to the problem.

After the verdict was returned in favor of Dr. Burnett, Mr. Fowler moved for a new trial. The Trial Court granted the motion and said that marijuana usage on the part of Mr. Fowler had not proven to be relevant to any issue on trial, and that even if relevant it was so prejudicial that it should have been excluded, citing Ark. R. Evid. 403.

### 1. Waiver

Dr. Burnett argues that Mr. Fowler waived the objection made in the motion in limine by being the first to introduce the evidence in question and by not objecting to that evidence when it was further introduced by Dr. Burnett.

We have held very clearly that a motion in limine is sufficient to call attention to a potential error, and that one who has made such a motion need not object further. *Ward* v. *State*, 272 Ark. 99, 612 S.W.2d 118 (1981). *See also Delta School of Commerce, Inc.* v. *Wood*, 298 Ark. 195, 766 S.W.2d 424 (1989); *Schichtl* v. *Slack*, 293 Ark. 281, 737 S.W.2d 628 (1987).

While those cases answer one aspect of the argument, they do not address the other. May a party whose motion in limine has been overruled be the first to broach the subject of the motion during jury voir dire or examination of a witness without waiving the error?

Dr. Burnett argues that one who introduces *incompetent or improper* evidence cannot object to the admission of evidence from the adverse party relating to the same matter, citing *Peters* v. *Pierce*, 308 Ark. 60, 823 S.W.2d 820 (1992); *Transit Homes* v. *Bellamy*, 282 Ark. 453, 671 S.W.2d 153; and *Eaves* v. *Lamb*, 209 Ark. 987, 193 S.W.2d 328 (1946). The distinction between this case and those is that here the evidence had, at the time it was introduced by Mr. Fowler, been held *not improper* by the Trial Court. We see no reason why, once the matter of admissibility has been settled, either party may not use the evidence in question.

### 2. Relevancy

Although we need not rule on the question, we tend to disagree with the Trial Court's statement, in his ruling on the motion for a new trial, that the evidence of Mr. Fowler's use of marijuana was irrelevant. Mr. Fowler was seeking damages based, in part, upon his financial future which included his employability and life expectancy. There was testimony that he could not perform the kind of work he previously did in his family's business. There was also some allusion to the offer, prior to the injury, of a job with another company which would have paid him over $30,000 a year and the possibility that such offers would no longer come to him.

In *Biddle* v. *Riley*, 118 Ark. 206, 176 S.W. 134 (1915), we noted that, if it is limited to the capacity to earn a living, and not introduced just to bolster the plaintiff's credibility as a witness, evidence of "moral character, as well as . . . habits of sobriety and industry" could be presented to the jury "for the purpose of drawing a picture . . . of the earning capacity of which . . . [the plaintiff] had been permanently deprived by the negligent acts which caused his injury." In that case, the evidence produced was favorable to the plaintiff.

In *Oxford* v. *Hamilton*, 297 Ark. 512, 763 S.W.2d 83 (1989),

however, we dealt with a case in which a victim of an automobile accident sought damages based on loss of future earnings and earning capacity. Evidence of his alcoholism was admitted, and we said:

> The Trial Court has discretion in determining the relevance of evidence and in gauging its probative value against unfair prejudice. *Simpson* v. *Hurt*, 294 Ark. 41, 740 S.W.2d 618 (1987). Given the fact that evidence of the appellant's habits was useful and even necessary to assist the jury in determining his life expectancy, we find no abuse of discretion. *See Pearce* v. *Fletcher*, 74 N.C. App. 543, 328 S.E.2d 889 (1985).

### 3. Abuse of discretion

Arkansas Rules of Evidence 403 allows a ruling that evidence is inadmissible, even if it be relevant, if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Before the trial, the Trial Court ruled the evidence of Mr. Fowler's marijuana use was not to be excluded. After the trial he ruled that it should have been excluded.

Just as it is within the Trial Court's discretion to decide pursuant to Rule 403 that evidence, though relevant, is to be excluded because it is unfairly prejudicial, *Simpson* v. *Hurt, supra; Bennett* v. *State*, 297 Ark. 115, 759 S.W.2d 799 (1988), it is within the Trial Court's discretion to grant a new trial on the basis of an "error of law occurring at the trial and objected to by the party making the application." Ark. R. Civ. P. 59(a)(8).

To reverse the decision granting or denying a new trial, it must be shown that there was an abuse of the Trial Court's discretion. *Hamilton* v. *Russell*, 307 Ark. 478, 821 S.W.2d 35 (1991); *Drope* v. *Owens*, 298 Ark. 69, 765 S.W.2d 8 (1969). A showing of abuse is more difficult when a new trial has been granted because the party opposing the motion will have another opportunity to prevail. *Scott* v. *McClain*, 296 Ark. 527, 758 S.W.2d 409 (1988). Dr. Burnett has not convinced us that the granting of a new trial in these circumstances was an abuse of discretion, and that is the standard we apply.

The *Simpson, Oxford, and Biddle* cases cited by Dr. Burnett on this point are ones in which we have approved the admission of evidence as an exercise of a trial court's discretion. They involve personal habits such as alcoholism and the propensity toward swearing. None of them involves admission of a criminal offense such as possession of marijuana. *See* Ark. Code Ann. §§ 5-64-215 and 5-64-401 (Repl. 1993)

### *4. Conclusion*

We know of no requirement that a judge decide a motion in limine at the time it is made or even at the instant a ruling is sought during the trial. The Trial Court in this case may well have been on the proper track of waiting to rule until the matters of relevancy and prejudicial effect were easier to ascertain. Once the issue came to a head, however, it would have been well for the Trial Court to have held a hearing out of the presence of the jury to determine all of the evidence Dr. Burnett intended to elicit with respect to that to which Mr. Fowler objected in the motion. By taking that additional step, a trial court may better position itself to rule on a motion in limine like the one made in this case.

We do not know just what the evidence will be when the case is retried. Our decision today is that, based on the manner of proceeding in the first trial the Trial Court did not abuse his discretion in granting a new trial. We make no binding decision on whether the prejudicial aspect of marijuana use outweighed its probative value. Again, that is a discretionary decision to be made based on the procedural posture of the parties and the facts known to the Trial Court when the issue arises.

Affirmed.

HAYS, J., dissents.

STEELE HAYS, Justice, dissenting. I believe the court is extending the use and effect of a motion in limine far beyond its intended scope. *See* generally *Schichtl* v. *Slack*, 293 Ark. 281, 727 S.W.2d 628 (1987), *Kitchens* v. *State*, 271 Ark. 1, 607 S.W.2d 345 (1980). It is one thing to hold that a motion in limine preserves an objection and quite another to extend it to the point of permitting the movant to affirmatively introduce such evidence. The

latter course runs counter to the entrenched rule that one may not invite error and then complain. *Peters* v. *Pierce*, 308 Ark. 60, 823 S.W.2d 820 (1992); *Eaves* v. *Lamb*, 209 Ark. 987, 193 S.W.2d 328 (1946). And *see Hays* v. *State*, 260 Ark. 701, 597 S.W.2d 821 (Supplemental Opinion on denial of rehearing, Ark. App. 1980). I respectfully dissent.