Charles A. "Jack" WALLS *v.* STATE of Arkansas

CR 98-521 986 S.W.2d 397

Supreme Court of Arkansas
Opinion delivered March 4, 1999
[Petition for rehearing denied April 15, 1999.*]

---

* GLAZE, CORBIN, and SMITH, JJ., would grant.

*Hubert W. Alexander* and *Jon Johnson*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

R OBERT L. BROWN, Justice. Appellant Charles A. "Jack" Walls appeals from a sentence given by the circuit judge following his guilty plea to five counts of rape and a plea of *nolo contendere* to one count of rape. The circuit judge sentenced Walls to two forty-year terms and four life terms in prison, to be served consecutively. Walls states several grounds for appeal, including a claim that the circuit judge erred in allowing and then considering for sentencing purposes irrelevant evidence relating to Walls's culpability for the murder of the Stocks family. We agree with Walls that this was an abuse of discretion, and we reverse and remand for resentencing.

Jack Walls was a boy scout troop leader who sexually molested boys under his care. After he pled guilty to four counts of raping the boys and one count of no contest, two counts of solicitation to commit murder involving the Hogan family were nol prossed. On January 22, 1998, the circuit judge conducted a sentencing hearing. At the hearing, the prosecutor called the boys who were Walls's victims as witnesses and in some instances their parents and grandparents. It evolved at the hearing that Walls

introduced his victims to weapons, alcohol, pornography, and sexual acts with him. The focal point of the hearing was testimony relating to the impact of Walls's actions, and the rapes in particular, on the lives of the boys.

■ Our sentencing law provides that in the sentencing phase of the trial, evidence relevant to sentencing may include victim-impact evidence and statements. *See* Ark. Code Ann. § 16-97-103(4) (Supp. 1997). The sentencing statute further provides that relevant character evidence and evidence of aggravating and mitigating circumstances may be allowed. *See* Ark. Code Ann. § 16-97-103(5) & (6). Our caselaw has primarily dealt with the relevancy of victim-impact evidence in the context of a murder victim. *See, e.g., Noel v. State,* 331 Ark. 79, 960 S.W.2d 439 (1998); *Hicks v. State,* 327 Ark. 727, 940 S.W.2d 855 (1997); *Kemp v. State,* 324 Ark. 178, 919 S.W.2d 943 (1996); *Nooner v. State,* 322 Ark. 87, 907 S.W.2d 677 (1995). In *Noel v. State,* for example, we stated that relevant victim-impact evidence is evidence that informs the jury of the toll of the murder on the victim's family. Citing *Payne v. Tennessee,* 501 U.S. 808 (1992), we said in *Noel* that when victim-impact evidence is unduly prejudicial, it may render the trial fundamentally unfair and violate the Due Process Clause.

■ We begin our analysis by noting that the circuit judge was in error when he twice overruled objections by defense counsel and stated that the rules of evidence do not apply to sentencing hearings or to victim-impact evidence in particular. In 1994, we held that the evidence listed in § 16-97-103, including victim-impact evidence, "must be governed by our rules of admissibility and exclusion; otherwise, these proceedings would not pass constitutional muster." *Hill v. State,* 318 Ark. 408, 413, 887 S.W.2d 275, 278 (1994).

We turn then to whether testimony was received and weighed by the circuit judge in sentencing that was irrelevant and whether prejudice resulted. Prior to Walls's sentencing hearing, one of his victims, Heath Stocks, had been convicted of murdering his mother, father, and sister. Heath pled guilty and was sentenced to life in prison without parole. At Walls's sentencing

hearing, his defense counsel first objected on grounds of relevancy to the testimony of Dorothy Stocks, Heath's grandmother, about the Stocks family murders. Delving into the background of the murdered family members, the prosecutor had asked about the occupation of Joe and Barbara Stocks and what Heather, Heath's sister, was like. After defense counsel objected, the prosecutor answered that there was no jury involved at the hearing, and she added that she would "relate" the Stocks deaths as far as their effect on Heath. The circuit judge allowed her to proceed. Defense counsel objected a second time on relevancy grounds to Dorothy Stocks's testimony about the last time she saw Heath before the murders. But the circuit judge again overruled the objection on the basis that these were victim–impact statements and not evidentiary matters.

Heath's other grandmother, Annie May Harris, was called as the next witness. She testified that her daughter, Barbara Stocks, had told her that she had found Heath and Walls in bed together in her house. Mrs. Harris told the judge that the "horrible secret" grew inside Heath until he exploded, and his family was gone. She said that Walls told Heath he was training him to be a "hit man." At that point, defense counsel objected for the same purpose as his previous objection and said that this was "hearsay on hearsay on hearsay" and that there was no way to cross-examine the witness on these assertions. The circuit judge reminded defense counsel that he was "not a jury." The following colloquy ensued where the circuit judge assured defense counsel that he could separate the relevant from the irrelevant:

> THE COURT: You're going to have to understand that I am trained in the law, and that I will take what information and the facts that they give me and disseminate that and use —
>
> DEFENSE COUNSEL: I just wanted to —
>
> THE COURT: — what's appropriate and discard that. Part of the reason for a victim impact statement is for healing and therapy, and so I'm going to allow them to do this.
>
> DEFENSE COUNSEL: I just didn't want to look like an idiot sitting here, Judge, and not say anything.

THE COURT: You've done your client an excellent job, Mr. Alexander.

The next witness called was Heath Stocks. He described how Walls introduced him to alcohol and told the judge that he was eleven or twelve when Walls first raped him. He also testified that Walls introduced him to pornography and taught him how to shoot at human targets. The prosecutor then asked Heath whether Walls talked to him about killing people. At that point, defense counsel objected again on the basis that this victim-impact evidence had nothing to do with solicitation to commit murder. The prosecutor responded that Walls manipulated and controlled Heath. Defense counsel answered that he would like to move *in limine* to prohibit the prosecutor from going into solicitation to murder because those charges related to the Hogan family and had been dismissed. The circuit judge interrupted and said Heath was a victim and that he would listen to whatever Walls did to Heath that "impacted his life." The circuit judge pointed out that the prosecutor had not yet asked about solicitation to murder or the Hogans.

The prosecutor injected that there were "two different circumstances" she would be talking about, which was an obvious reference to Walls's involvement regarding the potential murder of the Hogans and the actual murder of the Stockses. The prosecutor added that she was allowed to go into other "bad acts" as part of victim-impact evidence. The discussion ended with the judge saying he would not include dismissed charges in Walls's sentence:

> DEFENSE COUNSEL: Well, if you're going to consider those things, then we should have — we could have pled guilty to everything. Because, if you're going to consider solicitation of murder that we were — that we didn't plead guilty to, then —
>
> THE COURT: Mr. Allen, you are assuming that this Court would then, in sentencing, include charges that have been dismissed, and that's not going to happen.
>
> But I am entitled to know the mind-set of these people. I am entitled — I mean, I — if you choose, I'm entitled to know the mind-set of your client. But the fact that he doesn't want to say anything has absolutely no bearing on me.

> But if these people are going to testify to things she can relate up to how it has impacted them, I'm going to allow it.

With the assurance that uncharged acts would not be included for sentencing purposes but that the circuit judge would listen to whatever impacted Heath's life, the sentencing hearing continued.

After defense counsel's objection was overruled, the prosecutor elicited from Heath a vivid description of Walls's solicitation to murder the Hogans and an even more graphic recounting of Walls's involvement in the Stocks murders. The essence of the testimony was that Walls had trained Heath to be an assassin. After Heath told his mother and sister about his homosexual relationship with Walls, he told Walls what he had done. According to Heath, Walls told him to "take care of the problem," which he interpreted to mean "kill it." Defense counsel, on cross-examination, explored whether Heath blamed Walls for the murders in an effort to establish that Heath committed the murders, not Walls.

The prosecutor next called Robert Marble, minister of the United Methodist Church in Concord, as a witness. Reverend Marble testified that Heath told him on two occasions that Walls had told him to kill his family. Defense counsel did not object to this testimony.

On February 4, 1998, the circuit judge sentenced Walls. Before pronouncing sentence, the judge made a lengthy statement about the case. Towards the end of his statement, the judge said:

> I do not have to believe Heath Stocks's testimony that you told him to kill his testimony (*sic*) to know that he was your finest creation, and perhaps most vulnerable victim, and to know that he became what you taught him to be. I only know that, in the very least, you are indirectly responsible for the deaths of Joe, Barbara and Heather Stocks.

The circuit judge followed this with a finding that "many of these young men stalked the Hogans for you [Walls]." Shortly thereafter the circuit judge pronounced sentence.

## I. Proper Objection

Before addressing the merits of whether Walls's culpability for the Stocks murders was irrelevant and unduly prejudicial victim-impact evidence, we must determine whether the issue was properly preserved for our review. The State contends that this evidence, at times, was allowed into evidence without objection, and, as a consequence, we cannot review it. We disagree.

■ ■ We first consider it significant that the sentencing hearing was conducted before a judge, not a jury. We have emphasized many times in both civil and criminal cases that the circumstances of a bench trial are different with respect to relevant evidence because a judge is better equipped to sort out what is pertinent to the issue at hand. *See, e.g., Stewart v. State*, 332 Ark. 138, 964 S.W.2d 793 (1998); *In Re Adoption of K.F.H.*, 311 Ark. 416, 844 S.W.2d 343 (1993); *Rich Mountain Elec. Coop. v. Revels*, 311 Ark. 1, 841 S.W.2d 151 (1992). In *Stewart*, we addressed the situation where evidence in a bench trial had been contested by defense counsel by a motion *in limine* and the motion had been overruled. Unlike a jury trial, we held that subsequent objections to the testimony were not necessary:

> In reaching this conclusion, we are not unmindful of two recent cases where we held that a contemporaneous objection is required in order to preserve for appeal issues that were raised in a motion in limine. *Slocum v. State*, 325 Ark. 38, 924 S.W.2d 237 (1996); *Massengale v. State*, 319 Ark. 743, 894 S.W.2d 594 (1995). We, however, find these cases distinguishable because they involved jury trials, instead of a bench trial as in this case. If a contemporaneous objection is not made at the time the evidence is offered during a jury trial, the proverbial bell will have been rung and the jury prejudiced. However, when the contested evidence is mentioned during a bench trial, there is no risk of prejudice *because a trial judge is able to consider evidence only for its proper purpose.*

*Stewart*, 322 Ark. at 143, 964 S.W.2d at 796. (Emphasis added.)

■ In the case before us, defense counsel objected to the testimony of Heath Stocks's two grandmothers. Counsel contested the testimony of Dorothy Stocks, who was asked to give

background information about the murdered Stocks family members. Defense counsel objected to the testimony of Annie Mae Harris when she testified that Heath told her that Walls was training him to be a "hit man." Finally, defense counsel objected when the prosecutor asked Heath whether Walls talked to him about killing people. Defense counsel argued victim impact had nothing to do with the dismissed solicitation-to-murder charges and moved *in limine* to that effect, but the circuit judge responded that he would listen to whatever Walls did to Heath that had an impact on Heath's life. The scope of the circuit judge's ruling was clear that he would allow as victim-impact testimony whatever Walls said or did to Heath, regardless of whether it embraced the solicited murders of the Hogans or the actual murders of the Stocks family. Under these circumstances where a bench trial is involved and where the ruling has been made, continuous objections to the same testimony on relevancy grounds are not required. We hold that the issue is preserved for our review even though defense counsel did not object to the later testimony of Reverend Marble.

■ There is one final point concerning preservation of this issue. After the ruling by the circuit judge that he would allow all testimony showing any impact on Heath caused by the rapes, defense counsel cross-examined Heath about Walls's role in the Stocks murders. The question is whether by doing so, defense counsel waived any objection to this evidence. We think not. In an analogous case, we held that plaintiff's counsel did not waive an objection made in a motion *in limine* regarding marijuana use by the plaintiff in a medical malpractice case. *See Burnett v. Fowler*, 315 Ark. 646, 869 S.W.2d 694 (1994). In *Fowler*, the motion was overruled. After the ruling, plaintiff's counsel was first to present to the jury evidence of marijuana use by the plaintiff. The jury returned a defendant's verdict, and the plaintiff moved for a new trial, which the trial court granted on the basis that the evidence of marijuana use had been too prejudicial. In holding that plaintiff's first introduction of the marijuana usage did not constitute a waiver of the issue on appeal, we said: "We see no reason why, once the matter of admissibility has been settled, either party may

not use the evidence in question." *Fowler*, 315 Ark. at 650, 869 S.W.2d at 696.

 Similarly, in the instant case the circuit judge's ruling allowed the prosecutor to develop Walls's role in the Stocks murders. After the ruling, the door was open, and defense counsel were obliged to protect their client on the issue as best they could. We see no waiver by defense counsel in this regard.

## II. Victim Impact

We turn then to whether evidence of Walls's involvement in the Stocks murders was relevant victim-impact evidence. We conclude that it was not. As already stated, the policy reasons for distinguishing jury trials from bench trials is clear. A judge in a bench trial is better able to separate the evidentiary wheat from the chaff in deciding what is relevant in making his or her decision. In this case, the prosecutor argued to the circuit judge at one point that because a jury was not involved, he should allow the grandmother to testify to the Stocks murders. The circuit judge picked up on the same theme and said on two occasions that he could separate the relevant evidence from what was irrelevant and added at one point that he would not include dismissed offenses in his sentence.

What lies at the heart of our decision today is that the circuit judge, by his own words, held Walls responsible for the Stocks murders. The judge said: "I only know that, in the very least, you are indirectly responsible for the deaths of Joe, Barbara and Heather Stocks." This, of course, was the very victim-impact evidence that Walls's counsel attempted to exclude but was thwarted in doing so. Thus, if it was improper and unduly prejudicial for this evidence to be allowed and considered by the circuit judge, Walls's sentence must be reversed.

We focus again on what is proper victim-impact testimony. This, of course, was a sentencing hearing for multiple rapes of young boys to which Walls pled guilty. The offenses described by the boys and their parents were vile and sickening. But multiple murders of the Stocks family were not part of Walls's guilty plea. Walls had been charged with solicitation to commit murder with

respect to the Hogan family, but those charges had been nol prossed, apparently in association with Walls's guilty pleas. Walls had never been charged in connection with the Stocks family murders. Despite these facts, the circuit judge heard evidence, as victim-impact evidence, that Walls controlled Heath as a hit man and ordered him to murder his family. The judge ultimately concluded that this was true.

■ ■ We cannot sanction evidence of another crime as legitimate victim-impact evidence. Clearly, it is not relevant. On the issue of whether it was unduly prejudicial, that goes without saying. The State argues that Walls's counsel made no objection under Ark. R. Evid. 403 that the unfair prejudice of the testimony of the Stocks murders outweighed its probative value as victim-impact evidence. We agree that an objection couched in Rule 403 terms was not made, though an objection to the judge's consideration of dismissed offenses was clearly offered. There is, of course, the point that the circuit judge had previously stated that the rules of evidence would not apply to victim-impact evidence. Furthermore, we have previously considered prejudice in murder cases to be part of the analysis of what is relevant victim-impact evidence under the sentencing statute, § 16-97-103(4). *See, e.g., Noel v. State, supra; Hicks v. State, supra. See also Payne v. Tennessee, supra.*

The State continues that the Stocks murders were relevant to show the *character* of Walls under § 16-97-104(5). As authority, the State cites us to *Nichols v. United States,* 511 U.S. 738 (1994). The *Nichols* case involved whether a sentence for drug charges could be enhanced based on an uncounseled DUI misdemeanor conviction. In its discussion, the Court acknowledged that past criminal behavior could be considered by a sentencing court even when no conviction resulted. However, the Court in *Nichols* stated that such prior criminal behavior must be proved by a preponderance of the evidence.

In the case before us, the record does not reveal any notice to defense counsel that the issue of Walls's responsibility for the Stocks murders was to be tried to the circuit judge for sentencing purposes. The record only discloses a motion *in limine* by the

prosecutor to disclose other sexual acts of a pedophile under Ark. R. Evid. 404(b). There is also the fact that the circuit judge stated he would not consider dismissed solicitation-to-murder charges in connection with the Hogans. The Stocks murders came in solely under the cloak of victim-impact evidence. The *Nichols* case simply does not control this issue.

■ ■ The State further contends that the solicitation-to-murder evidence was admissible as an aggravating circumstance under our sentencing law, § 16-97-103(6). The State cites *Hill v. State, supra,* as authority. We held in *Hill* that evidence of a prior, uncharged robbery attempt was admissible in the sentencing phase, following a guilty plea for robbery against the same victim. But we made it clear in *Hill* that such relevant evidence should only come in "in the absence of prejudice." *Hill,* 318 Ark. at 415, 887 S.W.2d at 278 *(citing Pickens v. State,* 292 Ark. 362, 730 S.W.2d 230 (1987)). We concluded in *Hill* that the evidence was not prejudicial to the defendant. In the instant case, however, we cannot reach that same conclusion. Walls, without question, was prejudiced by the evidence of the Stocks murders, for the reasons already stated.

■ We hold that the circuit judge abused his discretion (1) when he allowed this testimony about the Stocks murders in as victim-impact evidence, and (2) when he held Walls responsible for those murders in fixing his sentence.

This issue really brings into sharp focus the protections afforded defendants in the criminal justice system. No matter how reprehensible the crimes committed, it is an article of faith in criminal law that we do not sentence for crimes that have not been proven. Nor should victim-impact evidence be used as a vehicle for testimony that Walls was an accessory to the murder of the Stocks family. We recognize how difficult a second sentencing hearing will be for the victims and their families. Nevertheless, if the criminal justice system is to have any credence at all, it must adhere to certain basic principles. It is unfair in the extreme for the sentencing judge to consider testimony of an uncharged, unproven crime for sentencing purposes under the aegis of victim-impact testimony.

Because the other issues raised for reversal are not likely to reoccur on resentencing, we do not address them.

Reversed and remanded.

GLAZE, CORBIN, and SMITH, JJ., dissent.

LAVENSKI R. SMITH, Justice, dissenting. I disagree with the majority that reversal is warranted in this case. The majority considers the court's statement, "I only know that, in the very least, you are indirectly responsible for the deaths of Joe, Barbara and Heather Stocks" an indication that the court intended to sentence Walls for uncharged crimes.

The sentence actually imposed indicates the court sentenced appellant in accordance with the law for the crimes he admittedly did commit. Appellant pleaded guilty to five counts of rape and no contest to a sixth rape count. All these offenses were committed repetitively against minor boys for nearly a decade. Appellant misused a position of trust to gain access to young boys and then sexually exploited them in base and despicable ways. Under our criminal code rape is a Class Y felony punishable by not less than ten (10) years and not more than forty (40) years or life. The trial court sentenced appellant to four consecutive life terms and two terms of forty (40) years. Given the heinous nature of the defendant's confessed acts I cannot say this sentence was indicative of prejudice.

The majority agrees with appellant that certain procedural improprieties during the hearing necessitate reversal. However, our cases are clear that only prejudicial error justifies reversal of the trial court. *Phillips v. State*, 321 Ark. 160, 900 S.W.2d 526 (1995). The sentence imposed does not indicate prejudice but was within applicable statutory parameters and commensurate with the nature of the offenses committed. I cannot say that upon remand the sentence imposed could be appreciably different. The abstract contains no record of appellant having objected to the sentence at the time of its imposition.

The court's statements regarding the rules of evidence were at best not artful and at worst misstatements of law. There is no question as to the applicability of the rules of evidence to the sen-

tencing phase of bifurcated criminal trials. They do apply. *Hill v. State*, 318 Ark. 408, 413, 887 S.W.2d 275 (1994). As we stated in *Hill*, "The introduction of evidence during this stage must be governed by our rules of admissibility and exclusion; otherwise, these proceedings would not pass constitutional muster, which is all the more reason to permit appeal." While the applicability of the evidence rules is clear, the meaning of the trial court's statements is not.

Neither of the court's statements are precise enough for us to know with certainty what meaning the court ascribed to them but to the extent they indicate that the rules of evidence would not apply in this defendant's sentencing hearing they were in error. However, it is apparent from the record that the court did apply the rules of evidence during the hearing. On all occasions appearing in the record, the court entertained and, when requested, ruled on evidentiary issues where raised.[1] Rather than an abandonment of the rules it is much more plausible that the court intended to apply the rules and yet permit victims and their families to express themselves freely regarding the negative consequences of appellant's actions. The statute authorizing victim-impact statements permits testimony regarding the effects of the crime on the victim, the circumstances surrounding the crime, and the manner in which the crime was perpetrated. Ark. Code Ann. § 16-90-1112 (1987). This is constitutionally permissible. According to the U.S. Supreme Court, "'as a general proposition, a sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.'" *Nichols v. United States*, 511 U.S. 738,747 (1994) (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972).

Furthermore, it is not at all certain that the court made a definitive ruling that the rules were not going to be applied. If appellant had any doubt about the rules' applicability an objection would have been in order. Objections are intended to apprise the

---

[1] Tr. 235, Tr. 239, Tr. 242-245, Tr. 255, Tr. 260, Tr. 265-266, Tr. 267-269, Tr. 271, Tr. 275-276, Tr. 283, Tr. 299-300, Tr. 304-305, Tr. 314-315, Tr. 321-322, Tr. 323-327, Tr. 341, Tr. 358-359, Tr. 397, Tr. 408-409, Tr. 423-424, and Tr. 442-443.

court of error in order to obtain an appropriate ruling or to pre-
serve an argument for appeal. *Brown v. State*, 326 Ark. 56, 931
S.W. 2d. 80 (1996). Apparently, appellant assumed that the rules
would be applied as he continued to make objections on these
same and on other grounds for evidentiary issues subsequent to
these remarks by the court.

I disagree that the testimony of Dorothy Stocks regarding
Joe, Barbara, and Heather Stocks was irrelevant. The Stockses
were the immediate family of appellant's victim, Heath Stocks.
Appellant contends testimony concerning these persons was irrel-
evant because they are deceased and were not victims of the appel-
lant. The portion of testimony appellant refers to went as follows:

PROSECUTOR: Let me ask you particularly about the Joe Stocks
family.

WITNESS: Yes.

PROSECUTOR: Your son, Joe, was a college graduate.

WITNESS: Yes.

PROSECUTOR: As was Barbara.

WITNESS: No, Barbara — Bonnie Gail is. Our daughter.

PROSECUTOR: Your daughter is a college graduate?

WITNESS: Yes.

PROSECUTOR: How were Joe and Barbara employed?

WITNESS: Joe had a — his own trucking business, and
Barbara held down two jobs. She worked at the
school, and she also worked at the Lonoke
County Extension Office. And to do this, Joe
worked awful hard, and Barbara did, too, to
provide their children with the best that they
could furnish them.

PROSECUTOR: If you will, tell me a little bit about Heather.

WITNESS: Heather was an exceptionally bright girl.
She —

MR. ALEXANDER: Your Honor, could we approach?

THE COURT: Yes.

This testimony was background information related to one of the victim's family life. The witness made no mention of the Stockses' family deaths. She made no effort to disparage appellant but merely recounted family history to help make meaningful a victim's experience. That particular victim had been raped and abused by appellant repeatedly over at least nine years. He also testified on his own behalf and was subject to cross-examination. Based upon this family background, Dorothy Stocks and witness Annie Mae Harris testified about how the victim suffered for reasons they could not discern, of how he changed and how the family suffered as the victim tried to carry the burden of the severe abuse he dared not and could not bring himself to mention. Their testimony was relevant to appellant's sentencing to the extent it related directly to familial consequences flowing from Walls's sexual violation of their grandson. Given this context, I cannot say the trial judge abused his discretion in allowing the background testimony.

It is apparent from the record in this case that appellant's sentencing hearing was handled less than optimally by both bench and bar. Appellant's counsel did not object, as the majority notes, to testimony from Reverend Marble regarding the Stockses' deaths. Additionally, appellant's own counsel's cross-examination of victim Heath Stocks deals directly with the issue of responsibility for the Stockses' murders. Numerous other times potentially inadmissible evidence was entered without objection. In order to gain reversal of the trial court, appellant carries the burden of demonstrating that the trial court committed prejudicial error. I do not believe he has done so. I therefore, respectfully dissent.

GLAZE and CORBIN, JJ., join.