Margie Roxanna JONES  *v.*  Darrell COKER, Ray Tipton,
and Farm Bureau Mutual Insurance Company of Arkansas, Inc..

CA 04-695                                                     204 S.W.3d 554

Court of Appeals of Arkansas
Opinion delivered March 2, 2005

*Crisp, Boyd & Poff, L.L.P.*, by: *Mark C. Burgess, for appellant.*

*Wright, Lindsey & Jennings L.L.P.*, by: *Edwin L. Lowther Jr.* and *Scott A. Irby*, for appellees Darrell Wayne Coker and Ray Tipton.

*Friday, Eldredge & Clark, L.L.P.*, by: *William A. Waddell Jr.* and *Amanda Capps Rose*, for appellee Farm Bureau Mut. Ins. Co. of Ark., Inc.

JOHN MAUZY PITTMAN, Chief Judge. This appeal concerns the admissibility of evidence in appellant Margie Jones's lawsuit against Farm Bureau Mutual Insurance Company of Arkansas, Inc. (Farm Bureau), and two of its agents, Darrell Coker and Ray Tipton, for breach of contract and negligence. Appellant's home was destroyed by fire in December 2001, and Farm Bureau denied the claim because her homeowner's policy had lapsed for nonpayment of premiums. Appellant sued, asserting that she had personally delivered a check to an employee of Farm Bureau for her automobile and homeowner's premiums before the policy lapsed. Appellees defended on the ground that appellant had only paid the automobile, and not the homeowner's, premium. Before trial, the circuit judge denied appellant's motion *in limine* concerning her prior history of late payments and policy lapses on her automobile and homeowner's policies, and such documentary and testimonial evidence was intro-

duced at trial. The question presented on this appeal is whether the trial judge abused his discretion in admitting that evidence. We hold that he did not and affirm.

Appellant insured her car in 1995 with Southern Farm Bureau Casualty Insurance Company, an affiliate of Farm Bureau. In November 1999, she insured her house at 930 North Corbin Street in Ashdown with Farm Bureau, paying her first year's premium in advance. Appellant did not live at her house; she resided and received her mail at another address in Ashdown. Although her automobile premium notices were sent to the second address after she moved there in 1997, the homeowner's premium notices were sent to the North Corbin address.

Appellant's homeowner's policy lapsed for nonpayment of premiums in November 2000 and was reinstated in February 2001. This policy lapsed again on March 20, 2001, and was again reinstated. On October 23, 2001, appellant went to Tipton's and Coker's office, where she gave a check for $342.63 to an employee. According to appellant, she did not have her premium statements with her and informed the employee that she wanted to pay the premiums for both her automobile and homeowner's policies; although she questioned the low amount, the employee assured her that this amount covered both premiums. As it turned out, this amount was the balance due for only the automobile premium, and appellant still owed the homeowner's premium. Farm Bureau sent a notice of premium due to appellant at the North Corbin address on November 6, 2001, stating that, if she did not pay $70.26, her homeowner's policy would lapse on November 19, 2001. According to appellant, she did not receive this notice. Her policy lapsed for nonpayment of premiums on November 19, 2001. Her house burned on December 22, 2001, and was a total loss.

After Farm Bureau denied her claim on the ground that the policy had lapsed, appellant sued appellees for breach of contract and negligence. Appellees responded that appellant had failed to pay her premiums. Before trial, the judge denied appellant's motion in limine seeking to prevent appellees from referring to her prior delinquent payments, policy lapses, and reinstatements of her automobile and homeowner's policies on the ground that they were not relevant, or if relevant, were unfairly prejudicial. At the hearing on the motion *in limine*, appellees argued that this evidence was admissible because it related to prior similar occurrences, absence of mistake, and habit under Ark. R. Evid. 404(b) and 406.

They asserted that this evidence was relevant to whether appellant had actually received the premium and cancellation notices and whether she had a pattern of permitting her homeowner's policy to lapse and then reinstating it. They also argued that this evidence would counter appellant's claim that she did not receive the notices regarding the last cancellation of the homeowner's policy. The judge stated that it showed a pattern and overruled appellant's objection.

At trial, appellant joined with appellees in introducing Joint Exhibits 1 through 17. These documents included appellant's November 9, 1999 application for homeowner's insurance; her October 22, 2001 check in the amount of $342.63 payable to Farm Bureau (showing the automobile policy number in the memo line); a homeowner's policy renewal notice effective November 9, 2000; a letter dated November 14, 2000, from Farm Bureau reminding appellant of her premium that was due on November 9, 2000; a letter dated October 7, 2000, from Farm Bureau to appellant reminding her of her payment due on November 9, 2000, with an attached renewal notice; an expiration reminder notice dated November 29, 2000, from Farm Bureau to appellant stating that her homeowner's premium due November 9, 2000, had not been paid, that her policy had expired, and that it could be reinstated; appellant's February 1, 2001 application for reinstatement of her homeowner's policy; a notice of premium due on March 3, 2001 on appellant's homeowner's policy; a homeowner's declaration dated March 20, 2001; a March 7, 2001 letter from Farm Bureau to appellant stating that her premium payment had not been received and that her policy would be canceled for nonpayment on March 20, 2001; a March 22, 2001 letter from Farm Bureau to appellant stating that her homeowner's policy had been canceled on March 20, 2001, for nonpayment of premiums; a March 27, 2001 letter from Farm Bureau to appellant stating that the payment she had made was not sufficient and that she owed a minimum of $75.68, due April 19, 2001, to pay her homeowner's premium to August 1, 2001; an April 24, 2001 letter from Farm Bureau to appellant stating that it had not received the $75.68 premium and that her homeowner's policy would be canceled on May 7, 2001; a July 4, 2001 notice of homeowner's premium due on August 1, 2001; an October 4, 2001 notice of premium due on November 1, 2001, on appellant's homeowner's policy; a November 6, 2001 letter from Farm Bureau to appellant informing her that it had not received the premium due and that her policy would be canceled if she did not pay $70.26 by November 19,

2001; a November 7, 2001 certificate of mailing; a November 21, 2001 notice from Farm Bureau to appellant informing her that her homeowner's policy had been canceled on November 19, 2001, for nonpayment of premiums; and a certificate of mailing dated November 21, 2001. These documents demonstrated that appellant's homeowner's policy lapsed for nonpayment of premiums in November 2000; that it was reinstated on February 1, 2001; that the policy again lapsed for nonpayment on March 20, 2001; that it was reinstated again; and that appellant was late in paying the $75.68 due in April 2001.

Appellant testified that she had received her automobile premium notices at her current address and that she did not recall having had any lapses of that policy. She said that, after her homeowner's policy lapsed in November 2000, she asked Farm Bureau to determine why she had not received her statements. She stated that she worked across the street from the Farm Bureau office and would pay her premiums there, writing separate checks for her homeowner's and automobile policies. Appellant also testified about her history of late payments and reinstatements of her homeowner's policy. She said that, in October 2001, she had informed the agency's employee that she needed to make both the homeowner's and automobile payments. She said that she had questioned the low amount stated by the employee and was assured that it covered both the automobile and homeowner's premiums. She also testified that she had asked if she should write two checks and was informed that she could write one.

Appellant called Darrell Coker as a witness. He testified that he had no recollection of appellant's automobile insurance having lapsed. Gayle Holmes, an employee of Farm Bureau, also testified. When counsel for Farm Bureau asked her about whether appellant's automobile policy had ever lapsed, appellant's counsel objected, stating: "I think they're gonna start talking about documents that I have never seen, about a lapse for auto that I have never been provided." Farm Bureau's counsel argued that this evidence was admissible in rebuttal because appellant had "opened the door" about the issue. The judge overruled the objection, and Ms. Holmes testified that, from 1995 until 2002, appellant was late in paying the premiums for her automobile policy fifteen times and had permitted the policy to lapse, with subsequent reinstatement, on one occasion.

In the verdict on interrogatories, the jury found that appellant had failed to prove any of her claims against appellees, and a judgment on the verdict was entered on November 26, 2003. This appeal followed.

Appellant argues that the trial judge erred in permitting the introduction of the evidence about her prior late payments and lapses of her homeowner's and automobile policies. She contends that this evidence was (1) not relevant under Ark. R. Evid. 401 and inadmissible under Ark. R. Evid. 402; (2) not admissible under Ark. R. Evid. 404(b); (3) not admissible under Ark. R. Evid. 406; (4) even if relevant and otherwise admissible, unfairly prejudicial under Ark. R. Evid. 403.

We will not reverse the trial judge's decision to admit or refuse evidence in the absence of an abuse of that discretion and a showing of prejudice. *Turner v. Northwest Arkansas Neurosurgery Clinic, P.A.*, 84 Ark. App. 93, 133 S.W.3d 417 (2003).

■ Appellant argues that the evidence of her prior late payments and the lapses of her automobile and homeowner's policies was irrelevant and inadmissible under Ark. R. Evid. 401 and 402 because those events did not arise out of substantially similar occurrences. In response, appellees contend that appellant waived her objections to the introduction of this evidence because she joined in the admission of the exhibits illustrating her prior transactions on her homeowner's policy, testified about those transactions at trial, and elicited testimony about her payments on her automobile policy from Mr. Coker. Usually, the failure to renew an objection constitutes a waiver of the matter. *See Marvel v. Parker*, 317 Ark. 232, 878 S.W.2d 364 (1994). Rule 103(a)(1) of the Arkansas Rules of Evidence provides that, when evidence is admitted, the record must reflect a timely objection or motion to strike stating the specific ground of objection, or any question about its admission is waived. *Accord Cheqnet Systems, Inc. v. Montgomery*, 322 Ark. 742, 911 S.W.2d 956 (1995); *Powell v. Burnett*, 304 Ark. 698, 805 S.W.2d 50 (1991). Also, by agreeing to a joint exhibit, a party will waive the right to question its contents. *See Garrett v. American Fidelity Assurance Co.*, 305 Ark. 74, 805 S.W.2d 78 (1991).

However, this case is different because the trial judge settled this issue by ruling on a motion *in limine*. A motion *in limine* is sufficient to call attention to a potential error, and one who has

made such a motion need not object further. *Burnett v. Fowler*, 315 Ark. 646, 869 S.W.2d 694 (1994). Also, a party whose motion *in limine* has been overruled may be the first to broach the subject of the motion during trial without waiving the error. *Id.* Once the matter of admissibility has been settled, either party may use the evidence in question. *Id. See also Schichtl v. Slack*, 293 Ark. 281, 737 S.W.2d 628 (1987). Accordingly, appellant did not waive her objections, and her arguments can be addressed on the merits.

Arkansas Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence that is not relevant is not admissible. Ark. R. Evid. 402. Relevance is a concept of admissibility and not one of weight. Wilson Howe, *Arkansas Rules of Evidence* 41-42 (2d ed. 1995). In that treatise, the author states:

> Thus, to be relevant, evidence need not conclusively establish the fact of consequence. All it must do, when considered in the entire context of the trial, is make the proposition for which it is offered more or less probable than it would be without it.

> A very important aspect of the definition of relevant evidence is contained in the phrase "*any* tendency." . . . [U]nless the rationale of this Rule's definition is followed carefully and with the realization that evidence need only have a "tendency," the error of arguing its weight rather than admissibility will be easily made.

> The same analysis is applicable whether the evidence be direct, circumstantial, real or demonstrative. The test remains whether it has "any tendency" to prove or disprove a proposition consequential to determining the case. . . .

> . . . .

> . . . [E]vidence is not rendered irrelevant simply because, standing alone, its probative force is weak or its circumstantial nature requires many connecting links.

*Id.* at 42-43 (emphasis in original).

The general rule with respect to the admissibility of evidence of similar occurrences is that it is admissible only upon a showing that the events arose out of the same or substantially

similar circumstances. *Ford Motor Co. v. Massey*, 313 Ark. 345, 855 S.W.2d 897 (1993). The burden rests on the party offering the evidence to prove that the necessary similarity of conditions exists. *Id.* The relevancy of such evidence is within the trial judge's discretion, subject to reversal only if any abuse of discretion is demonstrated. *Id. Accord Westark Specialties, Inc. v. Stouffer Family Limited Partnership*, 310 Ark. 225, 836 S.W.2d 354 (1992); *Fraser v. Harp's Food Stores, Inc.*, 290 Ark. 186, 718 S.W.2d 92 (1986). Whether an occurrence is substantially similar to the matter at hand depends on the underlying theory of the case. *Union Pacific Railroad Co. v. Barber*, 356 Ark. 268, 149 S.W.3d 325, *cert. denied*, 543 U.S. 940, 125 S.Ct. 320 (2004); *Ford Motor Co. v. Massey, supra.*

Appellant contends that her theory of the case is *not* that, before October 23, 2001, Farm Bureau failed to send her homeowner's premium notices but that its employee told her the wrong amount to pay for both her homeowner's and automobile policies. She admits that she was aware on October 23, 2001, that her homeowner's premium was due; therefore, she argues, the evidence of prior occurrences is not substantially similar to this issue and was not admissible. Appellees counter that argument by stating that this evidence was completely in line with *their* underlying theory of the case — that appellant had a practice of making late payments and permitting her homeowner's policy to lapse and that the last lapse was a part of that pattern. Further, appellees argue, they introduced the evidence of appellant's payment history on her automobile policy to attack her credibility.

A motion *in limine* is not designed to choke off an entire claim or defense. *Schichtl v. Slack*, 293 Ark. 281, 737 S.W.2d 628. The evidence of appellant's late payments and lapses regarding her automobile and homeowner's policies was relevant because the prior occurrences, especially regarding her homeowner's policy, were substantially similar and made it much more likely that appellant knowingly chose not to pay her premium before it lapsed in November 2001.

Appellant also contends that the evidence at issue did not show that she had " 'a motive, opportunity, intent, preparation, or plan' to *not pay the premiums, allow the policy to lapse, and then reinstate the policy.*" (Emphasis in original.) She also argues that, if she had such a chain of "prior bad acts," that chain was broken by

her timely payments in May and July 2001. Appellees point out, however, that her payment in May 2001 was *not* timely. Arkansas Rule of Evidence 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*See Sonny v. Balch Motor Co.*, 52 Ark. App. 233, 917 S.W.2d 173 (1996). When evidence is admitted under this rule, the probative value of the evidence is based upon its possessing a virtually invariable regularity. Wilson Howe, *Arkansas Rules of Evidence* 79. The more variable the conduct, the less it can be said to be either habitual or routine. *Id.* Because appellant made only one timely payment on her homeowner's policy between November 2000 and November 2001, allowed the policy to lapse twice before the final lapse in November 2001, and had a long history of late payments on her automobile policy, we believe this evidence was admissible to show her intent to not make the November 2001 payment on time and to show that a mistake did not occur. In light of our holding that this evidence was admissible for the foregoing reasons, we need not address appellant's argument that it was not admissible under Ark. R. Evid. 406, which concerns evidence of a person's habit.

Appellant further asserts that, even if this evidence was otherwise admissible, it should have been excluded as unfairly prejudicial under Ark. R. Evid. 403. Even though evidence is relevant according to Rule 401, it may be excludable under Rule 403, which provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

A trial court must first consider whether the relevant evidence creates a danger of unfair prejudice and, second, whether the danger of unfair prejudice outweighs its probative value. *Turner v. Northwest Arkansas Neurosurgery Clinic, P.A.*, 84 Ark. App. 93, 133 S.W.3d 417. The probative value of evidence correlates inversely to the availability of other means of proving the issue for which the allegedly prejudicial evidence is offered. *Id.*; *Easterling v. Weedman*, 54 Ark. App. 22, 922 S.W.2d 735 (1996). The trial court

has discretion in determining the relevance of evidence and in gauging its probative value against unfair prejudice, and its decision will not be reversed absent a manifest abuse of that discretion. *Jackson v. Buchman,* 338 Ark. 467, 996 S.W.2d 30 (1999). Error may not be predicated upon an evidentiary ruling unless a substantial right is affected, and we will not reverse in the absence of prejudice. *Id.*

In *Arkansas Rules of Evidence, supra,* 55-56, the author states:

> The key phrase in the rule is "substantially outweighed." This phrase and the general spirit of the Arkansas Rules strongly favor admissibility of relevant evidence. Thus the probative value of questioned evidence is pitted against the dangers it poses calling for exclusion only if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. . . .

> The problem that Rule 403 addresses is the fear that the juries will ignore, abuse or fail to perceive the probative value of evidence and, instead, be swayed by its emotional appeal or other factors. The broad question is how to tell when the purpose of the trial will be advanced or retarded by introduction of the evidence. Making this determination falls to the sound discretion of the trial judge.

> This discretion, like most other forms of judicial discretion, will not be disturbed absent a clear showing of clear abuse. It is necessary, therefore, for the trial judge to balance the probative value of proffered evidence against the dangers addressed by Rule 403. No specific balancing test is or likely could be prescribed by the Rule. Because of the Rule's formula that evidence's probative value must be substantially outweighed before exclusion is indicated, the task is to quantify an essentially subjective concept.

> . . . .

> . . . The kind of prejudice the Rule addresses, of course, is *unfair* prejudice, not the kind of "prejudice" that inheres in all evidence that advances one side to the detriment of the other. Unfair prejudice will naturally confuse the issues, mislead the jury and cause undue delay. But it is to be distinguished from the normal tendency of proper evidence to advance one's cause. This unfair prejudice in the Rule 403 sense means an undue influence on the jury that substantially outweighs its persuasive force. . . .

(Emphasis in original.)

Thus, the mere fact that evidence is prejudicial to a party does not make it inadmissible; it is only excludable if the danger of *unfair* prejudice substantially outweighs its probative value. *See Advocat, Inc. v. Sauer*, 353 Ark. 29, 111 S.W.3d 346, *cert. denied*, 540 U.S. 1012 (2003); *Marvel v. Parker*, 317 Ark. 232, 878 S.W.2d 364; *Turner v. Northwest Arkansas Neurosurgery Clinic, P.A.*, 84 Ark. App. 93, 133 S.W.3d 417. The prejudice referred to in Rule 403 denotes the effect of the evidence upon the jury, not the party opposed to it. *Turner v. Northwest Arkansas Neurosurgery Clinic, P.A.*, *supra*. Here, there is no question that this evidence was prejudicial to appellant's position; however it was not *unfairly* prejudicial. The trial judge, therefore, did not abuse his discretion in admitting it.

Affirmed.

GLADWIN and VAUGHT, JJ., agree.